Bettie CLARK, *et al.* *v.* PROGRESSIVE
INSURANCE COMPANY

CA 98-141 984 S.W.2d 54

Court of Appeals of Arkansas
Division IV
Opinion delivered December 23, 1998

314

*Wilson & Valley*, by: *E. Dion Wilson*, for appellant.

*Wright, Lindsey & Jennings LLP*, by: *Roger A. Glasgow* and *Kristi M. Moody*, for appellee.

JUDITH ROGERS, Judge. This case arises out of a hit-and-run automobile accident in which a pedestrian, Otha Jordan, was struck and killed. The accident occurred at approximately 10:30 p.m. on July 21, 1995, when Reginald Moseby, who was fleeing from the Dermott police while driving Teresa Moore's Cadillac, ran over Mr. Jordan. Ms. Moore was Moseby's girlfriend. At the time of the accident, Ms. Moore had an automobile liability insurance policy on her Cadillac with appellee Progressive Insurance Company. Appellant Bettie Clark and the other appellants (other than Moore and Moseby) are the heirs of Otha Jordan. They appeal the Chicot County Circuit Court's order granting appellee Progressive Insurance Company's motion for summary judgment. The insurance company had initially sought declaratory judgment and subsequently moved for summary judgment on the basis that it had no contractual duty to defend any suit against Reginald Moseby brought by the heirs of Otha Jordan or to satisfy any judgment against Moseby obtained by the heirs. The insurance company alleged that its liability policy with Moore excluded non-permissive users of her Cadillac and, when Moseby struck and killed Otha Jordan, he did not have Ms. Moore's permission to drive the Cadillac. We reverse and remand the circuit court's order granting summary judgment to the insurance company. We do so because, based on our review of the pleadings and other filings before the circuit court, we conclude that there is a genuine issue of material fact regarding

whether Reginald Moseby had Teresa Moore's implied permission to drive her automobile when he struck and killed Otha Jordan.

In April 1996, appellee Progressive Insurance Company filed in Chicot County Circuit Court a declaratory judgment complaint. In its declaratory judgment complaint, the insurance company recited the facts, noted above, and requested that the circuit court declare that it had no duty, based on its automobile liability insurance policy with Teresa Moore, to indemnify the heirs of Otha Jordan or to defend Reginald Moseby, if the heirs sued him. The insurance company asked for declaratory judgment on the basis that its liability insurance policy with Ms. Moore excluded non-permissive users and that Moseby was a non-permissive user of Ms. Moore's automobile when he struck and killed Otha Jordan. However, it conceded that it was contractually obligated to defend Teresa Moore. The insurance company's declaratory judgment action was assigned Chicot County Circuit Court Docket No. CIV96-49-1.

Just over a year later, in June 1997, the insurance company filed in Chicot County Circuit Court Docket No. CIV96-49-1 a motion for summary judgment. Therein, the insurance company repeated the facts and legal theory that it had set forth in its initial complaint requesting declaratory judgment and asserted that it was entitled to summary judgment because its liability policy with Ms. Moore specifically excluded coverage for non-permissive users of her automobile. The insurance company also noted in its brief in support of its summary-judgment motion that, subsequent to its requesting declaratory judgment, Bettie Clark, as the administratrix of the estate of Otha Jordan, filed a wrongful death action against Teresa Moore and Reginald Moseby in Chicot County Circuit Court Docket No. CIV 96-132-1.

On August 28, 1997, the circuit court handed down an order denying the insurance company's summary-judgment motion. In response to the circuit court's denial of its summary-judgment motion, the insurance company deposed Reginald Moseby and then attached a copy of Moseby's deposition to a supplement to its

summary-judgment motion.[1] At the time the parties deposed Moseby he was imprisoned in the Arkansas Department of Correction, where he was serving a two-year sentence imposed on him after he had been found guilty of the negligent homicide of Otha Jordan. The insurance company's supplement to its summary-judgment motion persuaded the circuit court to reconsider its denial of the company's summary-judgment motion. On October 28, 1997, the circuit court entered a second order granting summary judgment to the insurance company.

■ ■ The legal principles that govern our review of a trial court's grant of summary judgment are well established. Summary judgment should be granted only when a review of the pleadings and other filings reveals that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Grayson v. Bank of Little Rock,* 334 Ark. 180, 971 S.W. 2d 788 (1998). The moving party always bears the burden of sustaining a motion for summary judgment. *Liberty Mut. Ins. Co. v. Thomas,* 333 Ark. 655, 971 S.W. 2d 639 (1998). Summary judgment should not be granted when reasonable minds could differ as to the conclusions that could be drawn from the facts presented. *Thompson v. City of Siloam Springs,* 333 Ark. 351, 969 S.W. 2d 639 (1998). After the moving party has established a prima facie entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. *Adams v. Arthur,* 333 Ark. 53, 969 S.W. 2d 598 (1998). On appellate review, we determine if summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of the motion leave a material fact unanswered. *Id.* We review the evidence in the light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. *Nel-*

---

[1] General principles of issue preclusion do not bar renewal of a summary judgment motion in a cause of action if the renewal is accompanied by an affidavit or other supporting proof that rebuts the basis for the initial denial of the motion. *See Head v. United States Fidelity & Guaranty Co.,* 247 Ark. 928, 448 S.W.2d 941 (1970). In any event, because the denial of a summary judgment motion does not terminate a cause of action, the order of denial is subject to revision by the trial court before entry of a final judgment in the case. Ark. R. Civ. P. 54(b).

*son v. River Valley Bank & Trust,* 334 Ark. 172, 971 S.W. 2d 777 (1998). A party seeking a declaratory judgment may move for summary judgment. Ark. R. Civ. P. 56(a).

Reginald Moseby's deposition, which Progressive Insurance Co. introduced to support its renewal of its summary-judgment motion, leaves a genuine issue of material fact to be decided — whether Reginald Moseby had Teresa Moore's implied permission to drive her automobile when he ran over Otha Jordan. In his deposition Reginald Moseby stated that, at the time of the accident, Teresa Moore was his girlfriend, that he and Ms. Moore had "been together" for almost twelve years, that they lived together and that they had three children. Moseby also stated that he had never owned an automobile, but that he had helped Ms. Moore pay "the notes" on her Cadillac, which she had had about two months before the accident. When asked if he considered Ms. Moore's Cadillac to be his car, too, Moseby replied, "I been with her twelve years, so she's my wife, so what's hers is mine and what's mine is hers." Moseby admitted that even though Ms. Moore had forbidden him from driving her Cadillac, he had done so anyway and that she knew that he had done so. On this point, Moseby stated, "I say she knew I was driving the car, but I still didn't have her permission to drive it." Finally, with regard to whether Ms. Moore had given him permission to drive her Cadillac on the night that he struck and killed Otha Jordan, Moseby stated he confronted Ms. Moore, who was at the home of her sister and brother-in-law, Brenda and Robert Staggers, that Ms. Moore did not want him to drive her automobile that evening, that they struggled over the keys to the automobile, which Ms. Moore had in her hand, and that he took the keys from her and drove away.

 Whether the owner has given another person implied permission to drive his or her automobile depends on the nature of the relationship between the owner and the borrower. The standard treatise on the law of insurance describes "implied permission to drive an automobile" as follows:

> An implied permission . . . is not confined to affirmative action, but means an inferential permission, in which a presumption is raised from a course of conduct or relationship between

the parties in which there is a mutual acquiescence or lack of objection signifying consent.

But implied permission is not limited to such situations, and will be evaluated in light of all the facts and circumstances surrounding the parties.

Implied permission may be proved by circumstantial evidence. Circumstances such as usage, practice, or friendship may be used to show implied permission.

It may be found that the insured has given implied permission where the named insured has knowledge of a violation of instructions and fails to make a significant protest.

. . . .

It has also been stated, however, that the term "permission" contemplates something more than mere sufferance or tolerance without taking steps to prevent, and the term is used in the sense of leave, license, or authority with the power to prevent.

Such implied permission is usually shown by usage and practice of the parties over a period of time preceding the day upon which the insured automobile was being used, assuming, of course, that all parties had knowledge of the facts. When this showing is made, there is considered to be a sufficient showing of a course of conduct in which the parties mutually acquiesced to bring the additional insured within the policy protection, provided, of course, that any acquiescence on the part of the insured was by some one having authority to give permission for him.

6C Appleman, *Insurance Law and Practice* § 4365 at 177-87 (Buckley rev. ed. 1979)(internal citations omitted). If the owner of an automobile forbids another person from driving the automobile, but the other person continues to do so with the knowledge of the owner, then the owner has given implied permission to drive the automobile. *See Turner v. Alexander*, 690 So.2d 756 (La. Ct. App. 1997). Given Reginald Moseby's statement in his deposition that Ms. Moore knew he continued to drive her Cadillac even though she had told him not to do so, there is in the record a genuine issue of material fact regarding whether Ms. Moore had impliedly permitted Moseby to drive her Cadillac.

The possibility of Ms. Moore's having given Reginald Moseby implied permission to drive her Cadillac notwithstanding,

Progressive Insurance Company asserts that there is no genuine issue of material fact regarding whether Ms. Moore gave Moseby permission to drive her car on the night that he ran over Otha Jordan. Moseby's deposition testimony, noted above, would eliminate the existence of any genuine issue of material fact regarding whether Ms. Moore gave permission to Moseby to drive her Cadillac on the night in question, *if* it is deemed credible. Of course, in evaluating Progressive Insurance Company's contention that there is no genuine issue of material fact regarding Moseby's conduct on the night in question and Ms. Moore's conduct, as reported by Moseby, the circuit court should have considered Moseby's deposition and all inferences based thereon in the light most favorable to appellants. *See Nelson v. River Valley Bank & Trust, supra.*

A review of the record reveals several circumstances that would cause a reasonable fact-finder to doubt the truthfulness of Moseby's deposition testimony. Although there is little Arkansas authority directly on point addressing whether a motion for summary judgment should be denied because of the lack of credibility of the moving party's supporting evidence, there is ample persuasive authority in federal court decisions interpreting the federal version of our summary-judgment rule, Ark. R. Civ. P. 56, which is Federal Rule of Civil Procedure 56. We consider federal court decisions interpreting Fed. R. Civ. P. 56 to be highly persuasive authority. *See Caplener v. Bluebonnet Milling Co.*, 322 Ark. 751, 911 S.W.2d 586 (1995); *Wirges v. Hawkins*, 238 Ark. 100, 378 S.W. 2d 646 (1964). *Accord Bussey v. Bank of Malvern*, 270 Ark. 37, 603 S.W.2d 426 (Ark. App. 1980)(federal court decisions interpreting the Federal Rules of Civil Procedure are "of significant precedential value").

██ Federal court decisions interpreting the Federal Rules of Civil Procedure establish that a trial court may deny a motion for summary judgment based on the lack of credibility of the moving party's affiants or witnesses. A leading treatise on federal civil procedure summarizes the case law on this point:

> Doubts as to the credibility of the movant's affiants or witnesses may lead the court to conclude that a genuine issue [of material fact] exists. Indeed, as the Advisory Committee states

in its Note . . . "Where an issue as to a material fact cannot be resolved without observation of the demeanor of witnesses in order to evaluate their credibility, summary judgment is not appropriate."

. . . .

Clearly, if the credibility of the movant's witnesses is challenged by the opposing party and specific bases for possible impeachment are shown, summary judgment should be denied and the case allowed to proceed to trial, inasmuch as this situation presents the type of dispute over a genuine issue of material fact that should be left to the trier of fact. Thus, for example, if conflicting testimony appears in affidavits and depositions that are filed, summary judgment may be inappropriate as the issues involved will depend on the credibility of the witnesses.

10A Charles Allan Wright et al., *Federal Practice and Procedure* § 2726 at 440-47 (1998)(internal citations omitted). In essence, these federal decisions hold that the obvious doubtfulness of the moving party's supporting evidence can create a genuine issue of material fact for a jury. Moreover, even a moving party's witness's mere interest in the result of a suit requires dismissal of a summary-judgment motion and submission of the case to a jury. *Sartor v. Ark. Natural Gas Corp.*, 321 U.S. 620 (1944)(interpreting Fed. R. Civ. P. 56). *Accord Independent Ins. Consultants, Inc. v. First State Bank*, 253 Ark. 779, 489 S.W.2d 757 (1973)(Fogleman, J., dissenting and citing *Sartor*).

■ Several statements Reginald Moseby made during his deposition reveal his potential bias in Ms. Moore's favor. Moseby's bias establishes a motive for him to tailor his account of what happened between Ms. Moore and him on the night in question. In his deposition Moseby stated that he and Ms. Moore had "been together" for almost twelve years, that they had three children and that they lived together. He also stated that Ms. Moore was *still* his girlfriend. Moreover, Moseby admitted that Ms. Moore had spoken with him about the case. A reasonable fact-finder could doubt the truthfulness of Moseby's deposition testimony because his bias in favor of Ms. Moore would lead him to help her avoid the adverse financial consequences if she were found to have given him permission to drive her Cadillac on the night in question, which could, in turn, render Progressive Insur-

ance Company, as Ms. Moore's automobile liability insurer, liable to the estate of Otha Jordan. A reasonable fact-finder could conclude that Moseby would, at Ms. Moore's request, tailor his testimony to shield Progressive Insurance Company from liability and, thereby, help her avoid an increase in her insurance premium or the outright cancellation of her automobile insurance. A reasonable fact-finder could also conclude that Moseby's bias in favor of Ms. Moore would lead him to testify falsely in order to remove her as a defendant in the wrongful death action brought by appellants. Summary judgment in favor of Progressive Insurance Company, on the basis that there was no genuine issue of material fact as to whether Teresa Moore had given Reginald Moseby permission to drive her Cadillac, would set up a *res judicata* defense for Ms. Moore if she were sued by appellants on the theory that she was the proximate cause of Otha Jordan's death in that she negligently entrusted her Cadillac to Moseby or acted negligently in continuing to let him have access to her Cadillac. A trial court's grant of summary judgment can support a *res judicata* defense to a subsequent cause of action based on the same facts. *See* 46 Am. Jur. 2d *Judgments* § 606 at 880 (1994).

Another statement that Moseby made in his deposition that could cause a reasonable fact-finder to doubt his testimony in favor of Ms. Moore and Progressive Insurance Company was his admission that he was, at the time he was deposed, a convicted felon who was serving a two-year sentence for negligent homicide.[2] A reasonable fact-finder could conclude that a convicted felon currently serving a sentence of imprisonment would not be deterred by the possibility of a perjury conviction from giving false testimony in a deposition taken in a civil suit. During his deposition, Moseby was cross-examined about what he knew about perjury, and he stated that he knew what perjury was.

---

[2] Reginald Moseby admitted that he had been convicted of negligent homicide. A person commits negligent homicide if, while driving an automobile while intoxicated, he or she negligently causes the death of another person. Ark. Code. Ann. § 5-10-105(a)(1) (Repl. 1997). "Drunk driving" negligent homicide is a Class D felony. Ark. Code Ann. § 5-10-105(a)(2) (Repl. 1997).

Finally, the circumstance under which Progressive Insurance Company took Moseby's deposition could suggest to a reasonable fact-finder that Moseby tailored his deposition to enable Ms. Moore and the insurance company to obtain summary judgment. As noted above, Moseby admitted that Ms. Moore had spoken to him about the case. Progressive Insurance Company deposed Moseby only after its initial motion for summary judgment had been denied. In its order denying the initial summary-judgment motion the circuit court stated, in pertinent part:

> Exhibit "A" of [appellants'] which is referred to as a statement of [Moseby] by the Dermott Police Department reflects that Moseby refers to Moore as his wife which [gives] rise to the question of whether or not Moseby had expressed or implied permission to drive the vehicle.
>
> The Court is of the opinion that a genuine issue of material facts exists. Whether or not permission to use the vehicle existed and/or whether such permission was expressed or implied cannot be decided from the evidence presented herein. Thus, the motion for summary judgment is denied.

Appellants introduced "Exhibit A" into evidence before the circuit court initially denied Progressive Insurance Company's summary-judgment motion. This exhibit is an in-custodial statement that Moseby gave to a Dermott police officer at 3:10 p.m., July 22, 1995, about sixteen and one-half hours after Moseby had run over Otha Jordan. Therein, Moseby described his confrontation with Ms. Moore on the night in question at the home of his in-laws as follows:

> I ask[ed] my wife (Ms. Moore) why she had left me at my grandmother's house and to come on and let's go home. At that time my brother and sister-in-law (Robert and Brenda Staggers) said that she is not going anywhere. I then ask[ed] my wife (Ms. Moore) if she was coming with me, [and] at that time the in-laws started hitting on me. . . I reached on the couch and got the car keys, ran outside, got in the car and left.

Comparison of the pertinent part of the circuit court's initial order denying Progressive Insurance Company's summary-judgment motion with the pertinent part of Moseby's in-custodial statement establishes that the circuit court must have concluded

that Moseby's assertion in his in-custodial statement, "I reached on the couch and got the keys, ran outside, got in the car and left" supported the inference that Moseby had either the express or implied permission of Ms. Moore to drive her Cadillac on the night in question. Examination of Moseby's deposition reveals that he stated that during the confrontation at his in-laws' home Ms. Moore told him not to drive her automobile, that the keys to the automobile were on a couch, that Ms. Moore reached for the keys and that he took the keys out of her hand. The precision of Moseby's testimony on this point, when considered in light of Progressive Insurance Company's renewal of its summary-judgment motion on proof negating the inference of Ms. Moore's expressed or implied permission to Moseby to drive her automobile, which the circuit court drew based on Moseby's in-custodial statment, could suggest to a reasonable fact-finder that Moseby tailored his deposition testimony on this point to benefit Ms. Moore and Progressive Insurance Company. It is possible for testimony to be so precise and positive that the witnesses's credibility is undermined. *See Loftin v. Goza*, 244 Ark. 373, 425 S.W.2d 291(1968).

In summary, based upon statements Moseby made in his deposition, a reasonable fact-finder could conclude from his testimony that he did not have Ms. Moore's implied permission to drive her Cadillac on the night in question was not true. Based upon Moseby's statements, a reasonable fact-finder could conclude that Moseby was biased in Ms. Moore's favor. Moreover, Moseby admitted that Ms. Moore had discussed the case with him. In addition, a reasonable fact-finder could conclude that because Moseby admitted he was a convicted felon serving a sentence of imprisonment, he would not be deterred from testifying falsely in his deposition by the possibility of a perjury conviction. Finally, a reasonable fact-finder could conclude that Moseby tailored his deposition testimony about the circumstances on the night in question under which he obtained the keys to Ms. Moore's Cadillac in order to negate the part of his in-custodial statement to the Dermott police that provided the factual basis for the circuit court's initial order denying Progressive Insurance Company's summary-judgment motion. If there exists in the rec-

ord specific bases for impeachment of the moving party's witness, summary judgment should be denied. Wright, *supra.*

 For the reasons set forth above, we reverse the Chicot County Circuit Court's order granting appellee Progressive Insurance Company's summary-judgment motion and remand to the circuit court further proceedings.

Reversed and remanded.

JENNINGS and CRABTREE, JJ., agree.