Elizabeth TUNNEL, Administratrix of the Estate of
Charles Emlet, Deceased *v.* PROGRESSIVE NORTHERN
INSURANCE COMPANY

CA 02-289                                        95 S.W.3d 1

Court of Appeals of Arkansas
Division II
Opinion delivered January 8, 2003

*Jeff Slaton*, for appellant.

*Latham, Stall, Wagner, Steele & Lehman*, by: *Kenneth E. Wagner*, for appellee.

JOSEPHINE LINKER HART, Judge. Appellant is the administratrix of the estate of Charles Emlet, who was killed when he was struck by a car driven by Rebecca Cherry. At the time of the accident, Cherry was the named insured under an automobile policy issued in the state of Oklahoma by appellee Progressive Northern Insurance Company.[1] Appellant made demand on Progressive for the policy's liability and uninsured motorist (UM) coverage limits, which were $50,000 and $25,000 respectively, and for $5548.80 in medical payments (med pay) coverage. Progressive refused to pay the UM and med pay benefits on the ground that the late Mr. Emlet was not an "insured person" as defined by the policy. Progressive filed a declaratory-judgment action and later a motion for summary judgment on that same ground. The trial judge granted summary judgment to Progressive. We affirm.

---

[1] The trial court ruled that the interpretation of the policy was governed by Oklahoma law, and that ruling is not challenged on appeal.

On the night of February 9, 2001, Rebecca Cherry had just pulled onto a four-lane highway and was traveling north when she struck Charles Emlet, who was crossing the highway on foot. According to Cherry, she did not realize she had struck Emlet, and she continued down the highway until she was stopped by police. A police investigator determined that, after Emlet was struck by the left front corner of Cherry's vehicle, Emlet moved along the left side of the vehicle to a point behind the driver's door, where he disengaged and came to rest on the highway about sixty-six feet beyond the point of initial impact. The investigator estimated that Emlet was in contact with the vehicle for as little as .2 seconds.

The uninsured/underinsured motorist coverage provisions[2] of the Progressive policy provide that Progressive will pay damages that an insured person is entitled to recover from the owner or operator of an uninsured motor vehicle. The term "insured person" is defined to include "any person occupying a covered vehicle." Occupying, as defined in the policy, means "in, on, entering, or exiting." Progressive contended that Emlet was not an insured because he had not occupied the Cherry vehicle, and it asked the trial court to award summary judgment on that basis. Appellant responded with her own motion for summary judgment in which she argued that, during the time Emlet was carried sixty-six feet after the impact, he was "on" the vehicle and thus had occupied it. The trial judge ruled in favor of Progressive, and appellant appealed, contending that the trial judge erred in her interpretation of the policy.

■ ■ Normally, on a summary judgment appeal, the evidence is viewed in the light most favorable to the party resisting the motion, and any doubts and inferences are resolved against the moving party. *Aloha Pools & Spas, Inc. v. Employer's Ins. of Wausau*, 342 Ark. 398, 39 S.W.3d 440 (2000). But in a case where the parties agree on the facts, we simply determine whether

---

[2] Under Oklahoma law, uninsured motorist coverage includes underinsured coverage. *See* Okla. Stat. Ann. tit. 36, § 3636(C) (West. 1999). Consequently, when the term "uninsured" or "UM" is used in the policy or in this opinion, it includes underinsured coverage.

the appellee was entitled to judgment as a matter of law. *Id.* When parties file cross-motions for summary judgments, as was done in this case, they essentially agree that there are no material facts remaining, and summary judgment is an appropriate means of resolving the case. *McCutchen v. Patton,* 340 Ark. 371, 10 S.W.3d 439 (2000). We further note that where the meaning of a contract does not depend on disputed extrinsic evidence, the construction and legal effect of the policy are questions of law. *See Smith v. Prudential Prop. & Cas. Ins. Co.,* 340 Ark. 335, 10 S.W.3d 846 (2000).

Appellant relies on the case of *Wickham v. Equity Fire & Casualty Co.,* 889 P.2d 1258 (Okla. Ct. App. 1994), to support her contention that Emlet occupied the Cherry vehicle. There, Wickham stopped to help a fellow motorist, McClain, change a tire. He helped McClain locate the necessary tools in the trunk of McClain's car and proceeded to change the tire. As Wickham was tightening the last lug nut, he was struck by a passing, uninsured vehicle. He sought UM coverage under McClain's policy, but coverage was denied on the ground that he had not been occupying the McClain vehicle. The Oklahoma court held that the definition of "occupying"contained in the policy (similar to the definition here) was broad enough to include Wickham, who had looked through the trunk for tools, repaired the vehicle, and was situated next to it when hit. The court said it would not adopt a bright-line rule to determine whether a claimant had occupied a vehicle but would address the issue on a case-by-case· basis.

Appellant also relies on *Progressive American Insurance Co. v. Tanchuk,* 616 So. 2d 489 (Fla. Ct. App. 1993), *Adams v. Thomason,* 753 So.2d 416 (La. Ct. App. 2000), and *Pope v. Stolts,* 712 S.W.2d 434 (Mo. Ct. App. 1986), to support her argument. In *Tanchuk,* a tow truck driver had just pulled a Toyota out of a ditch when he returned to the tow truck to radio his employer. As he was leaning into the truck, he heard the Toyota driver scream because a Pontiac was bearing down on her car. Tanchuk ran back to see what was happening and was hit by the Pontiac, which was uninsured. Tanchuk sought UM benefits under the tow-truck policy. The insurer defended on the basis that Tanchuk had not been occupying the truck when he was struck. The Florida court held

that Tanchuk was occupying the vehicle because he had been alighting from it and was in close proximity to it when he was hit. In *Adams v. Thomason,* Adams was leaning against a vehicle that was parked on the side of the highway. Adams had been talking to the vehicle's owner, Grubisic, through the open window of the vehicle for one to five minutes when a pickup went past and got so close that Adams feared it might hit him. Adams tried to climb on Grubisic's vehicle to get out of the way, but he was struck by the pickup, which was uninsured. Adams sought UM coverage under Grubisic's policy, and the appeals court held that coverage was owed because Adams was "on" the Grubisic vehicle and thus an occupant of the vehicle. In *Pope v. Stolts,* Pope was assisting Stolts with a dead battery in a Mustang. A Ford Granada was parked hood to hood with the Mustang for charging purposes. As Pope was leaning against the opened hood of the Mustang and holding jumper cables in his hand, an uninsured motorist struck the Granada, which caused Pope to be injured. Pope sought UM coverage under the Mustang policy, and the question was whether he had been occupying the Mustang at the time he was injured. The appeals court held that he was because he was "on" the Mustang.

In each of the above cases, the party seeking coverage was or had been in contact with the insured vehicle, and *then* the accident occurred; their status as occupants of the vehicles was established before the accident. In the case before us, Emlet had no contact with the insured vehicle until the impact occurred. In fact, his contact was the result of the accident, not a circumstance that existed when the accident happened. In light of that fact, we are reluctant to accord him the status of an occupant. His being in touch with the vehicle was simply a consequence of the accident itself. Therefore, we agree with the trial judge that Emlet cannot be considered an insured under the Progressive policy.

Progressive has also pointed out that its policy excludes UM coverage for persons who occupy the covered vehicle "without the express or implied permission" of the named insured. It argues that, even if Emlet occupied the Cherry vehicle, he did not do so with Cherry's express or implied permission. Our holding

that Emlet was not an occupant of the vehicle makes it unnecessary for us to address that argument.

Affirmed.

BIRD, J., agrees.

PITTMAN, J., concurs.

JOHN MAUZY PITTMAN, Judge, concurring. I agree that this case should be affirmed. However, I vote to do so for a different reason, and I express no opinion on the particular issue decided in the majority opinion. Neither party broached the issue that constitutes the basis of the majority holding that the timing of Mr. Emlet's contact with the Cherry vehicle prevented him from being an insured. I would affirm instead on a ground that was fully developed by the parties in their briefs, *i.e.*, that even if Mr. Emlet can be said to have been "on" the Cherry vehicle, he was not on it with Ms. Cherry's permission.

The insurance policy in this case excluded from UM coverage persons who occupied the covered vehicle without the express or implied permission of the named insured. I do not believe that by any stretch of the imagination Mr. Emlet can be said to have occupied the Cherry vehicle with Ms. Cherry's express or implied permission.

Although the parties do not cite us to an Oklahoma case defining the term "permission," the Arkansas Supreme Court has defined "permission" to include "such usage of the car as was intended by the owner, expressly authorized or limited by the owner, or perhaps agreed to by the owner and the intended user." *Commercial Union Ins. Co. v. Johnson*, 294 Ark. 444, 745 S.W.2d 589 (1988). Further, we addressed the concept of "implied permission" in *Clark v. Progressive Insurance Co.*, 64 Ark. App. 313, 984 S.W.2d 54 (1998), in connection with permission to drive, rather than occupy, an automobile. Nevertheless, our discussion is instructive:

> An implied permission . . . is not confined to affirmative action, but means an inferential permission, in which a presumption is raised from a course of conduct or relationship between

the parties in which there is a mutual acquiescence or lack of objection signifying consent.

But implied permission is not limited to such situations, and will be evaluated in light of all the facts and circumstances surrounding the parties.

Implied permission may be proved by circumstantial evidence. Circumstances such as usage, practice, or friendship may be used to show implied permission.

It may be found that the insured has given implied permission where the named insured has knowledge of a violation of instructions and fails to make a significant protest.

.  .  .  .

It has also been stated, however, that the term "permission" contemplates something more than mere sufferance or tolerance without taking steps to prevent, and the term is used in the sense of leave, license, or authority with the power to prevent.

Such implied permission is usually shown by usage and practice of the parties over a period of time preceding the day upon which the insured automobile was being used, assuming, of course, that all parties had knowledge of the facts. When this showing is made, there is considered to be a sufficient showing of a course of conduct in which the parties mutually acquiesced to bring the additional insured within the policy protection, provided, of course, that any acquiescence on the part of the insured was by some one having authority to give permission for him.

*Id.* at 319, 984 S.W.2d at 58 (quoting 6C Appleman *Insurance Law & Practice* § 4365 (1979)).

It defies all logic to suggest that Ms. Cherry impliedly permitted Mr. Emlet to occupy her vehicle. Both she and Emlet made contact unknowingly, unwillingly, and unintentionally without benefit of prior communication, relationship, or history between them. Mr. Emlet's contact with the car was accidental and without Cherry's knowledge or forbearance; it was not the result of Cherry's permission, either express or implied.