Cite as 2022 Ark. App. 441

# ARKANSAS COURT OF APPEALS

DIVISION II
**No.** CV-21-446

| | |
|---|---|
| BEN RUSH AND JOANNE RUSH<br><br>APPELLANTS<br><br>V.<br><br>LYNNE DAVIS FAMILY LIMITED PARTNERSHIP; AND ADANNAC FAMILY PROPERTIES, LLC<br><br>APPELLEES | **Opinion Delivered** November 2, 2022<br><br>APPEAL FROM THE JEFFERSON COUNTY CIRCUIT COURT<br>[NO. 35CV-19-466]<br><br>HONORABLE ROBERT H. WYATT, JR., JUDGE<br><br>AFFIRMED |

## LARRY D. VAUGHT, Judge

Joanne and Ben Rush (the Rushes) appeal the Jefferson County Circuit Court's order granting summary judgment in favor of the appellees, Lynne Davis Family Limited Partnership and Adannac Family Properties, LLC (hereinafter referred to collectively as "the McNeill family" or "the McNeills").[1] The order also quieted title to a disputed forty-seven-acre parcel of land located on the McNeill family's farm and dismissed the Rushes' counterclaims for promissory estoppel and for the establishment of an easement. We affirm.

---

[1]Petitioner Lynne Davis Family Limited Partnership is an Arkansas limited partnership with its principal place of business in Little Rock, Arkansas. The members of the Davis FLP are Lynne Davis and her children, William Davis and Isabelle Thrash. Petitioner Adannac Family Properties, LLC, is a Mississippi limited liability company with its principal place of business in Madison, Mississippi. The members of AFP, LLC, are Rachel Cannada and her children, Cecilia Rutledge and Christy Burrow. The appellees' predecessors in interest are the McNeill Family Limited Partnership, Isabelle Earhart McNeill, and William McNeill. Together, these individuals and entities have owned and operated the McNeill family farm, which comprises approximately 1,500 acres in Jefferson County, Arkansas, since at least the 1940s. Therefore, we collectively refer to the appellees and their predecessors in interest as "the McNeill family."

The disputed tract of land is located in Jefferson County, Arkansas, and is bordered on all sides by a lake and by property owned by the McNeill family. The McNeill family contends that the disputed tract is part of a fifteen-hundred-acre farm that they have continuously owned and operated for almost eighty years. The McNeill family submitted evidence that, since the 1940s, they have behaved as if they own the now-disputed forty-seven-acre tract of land: cutting and clearing the timber, raising cattle on it, fencing it, leasing it to others for farming and hunting, commercially harvesting pecans from its trees, maintaining roads to it, posting signs on it to deter trespassers, hunting on it, and paying property taxes on all the contiguous land. Dating back to 1981, the McNeill family enrolled portions of the disputed tract of land in the United States Department of Agriculture (USDA) and Agricultural Stabilization and Conservation Service (ASCS) farm programs. Most recently, the McNeill Family placed portions of the family farm, including the disputed tract of land, in the Federal Conservation Reserve Program (CRP) in 2015 and 2017, and they planted trees and performed other conservation practices required by the program on the disputed property.

The McNeill family presented evidence that it holds a 1974 deed that conveyed "All that part of Section 29, which lies North of Arkansas River" and that the contested forty-seven acres lies squarely within that portion of section 29.

In 1975, Buckner Realty and Insurance Company, Inc. (owned by Mr. James Buckner), bought the forty-seven-acre tract of land—along with four other lots—for $106.38 at a tax sale. The McNeill family presented evidence that it was unaware of this sale at the time and that, since the tax sale, Buckner has had no access to the land, and no one has ever seen him

2

on the property. The McNeill family notes that the Rushes did not present any evidence from Buckner to the contrary.[2]

The McNeill family presented evidence that, in 1982, they put Buckner on notice that they were making a claim to the property that was open and adverse to Buckner's claim. In a letter dated October 28, 1982, Buckner wrote the following:

> Buckner Realty and Insurance Company, Inc., holds title to all of the Northeast ¼ South of the River in Section 29, T3S, R10W in Jefferson County. . . . I am requesting your approval to use the existing farm lanes on your adjoining property as an access to our property.

Dr. Ric Cannada (a son-in-law member of the McNeill family) responded to Buckner on behalf of the family and informed him that the family was not willing to grant Buckner's request to use the existing farm lanes on the McNeill property as an access to the forty-seven-acre tract. Further, Cannada asserted to Buckner that the McNeill family's property includes "all of the flooded timber at the west or north-west end of the lake" and that the McNeill family "post[s] the property anew each year." Buckner responded, stating, "I am afraid that we have a serious title problem concerning the disputed property . . . ." Buckner further noted that "[a]ccording to aerial photographs, the flooded timber at the west end of the lake is within the aforementioned legal description."

The McNeills presented affidavits stating that, despite being made aware of the "serious title problem," Buckner took no additional steps to assert his ownership of the property against the McNeills following their 1982 correspondences. Buckner did, however, continue

---

[2]At the hearing, Ben conceded that Buckner had not been on the disputed property in forty years and that Ben understood that to be the case when he executed the contract to purchase the property.

3

to pay taxes on the property and granted a flowage easement to the United States government in 2003.

The McNeills farmed the land, posted "no trespassing" markers annually, hunted on the land, and—from 1992 until 2017—leased the forty-seven-acre tract to third parties for farming operations. During this time the McNeill family continued to commercially harvest pecans on portions of the disputed property annually.

The evidence presented to the circuit court showed that, in 2019, Ben was perusing the Jefferson County Tax Assessor's records and saw that Buckner Realty and Insurance Company, Inc., owned the tract of land. He was interested in purchasing the land, so he contacted Buckner about buying the property. Buckner informed him that the tract of land was landlocked and that Buckner had no way to access it. Ben testified that he assumed that Buckner had not been on the property since purchasing it and that it "certainly has not been open to Mr. Buckner in the fact that he [was] not allow[ed] access to the property."

Ben contracted with Buckner to purchase the property on January 4, 2019, despite having never seen it. Buckner told Ben that adverse possession would have to be an exception to his title warranty. The real estate contract set the closing date for April 19, 2019. The title-insurance company also excepted any claims for adverse possession.

During the week of January 7, 2019, Ben tried to reach John Davis (son-in-law member of the McNeill family). At Davis's request, Cannada returned Ben's call on January 16, 2019. Cannada agreed to meet with the Rushes. On January 19, 2019, the Rushes and Cannada met at the McNeill family farm, got into Cannada's truck, and drove across the McNeill's pecan orchard to a place where they thought the corners to the disputed forty-seven-acre tract might

4

be located in the middle of a large field that, for decades, the McNeills had used for grazing and then farming.

The McNeills assert that Ben never asked about or discussed the issue of adverse possession with Cannada, John Davis, or any other member of the McNeill family. However, Ben testified that when he was in Cannada's truck driving across the property, Cannada blurted out that he "had no plans to pursue adverse possession." Ben did not respond to the statement, and Joanne Rush, who was sitting in the backseat, did not hear the statement. Ben also did not write the statement down or make any attempt to memorialize it at the time. Ben did not confirm the statement with Davis, who, along with Cannada, owned contiguous parcels of property or seek any similar assurances from other members of the McNeill family. Cannada denies having made the statement.

On January 22, 2019, Cannada contacted the Rushes and pleaded with them not to go forward with the purchase of the forty-seven-acre tract of land from Buckner. He asked them to allow the McNeill family to purchase the land instead. Cannada explained that "the land is surrounded by our ancestral family farm," and the "farm has been the heart of our family and our family heritage." Cannada told Ben "the idea of granting an access across our family farm to a land locked place in the middle of our farm is very troubling and difficult. If the law forces us to do it, we will of course comply."

After being told that the McNeill family would not voluntarily grant him access to the land and would only grant him an easement if they "were required to do so" and "if the law force[d] [the family] to do it," Ben sent an email to Cannada on January 27, 2019, in which he stated that the Rushes would "be back in touch once a decision has been made."

The Rushes then took steps to move up the closing date on the property to January 30, 2019. They purchased the property with adverse possession being specifically exempted from their warranty deed and title insurance. After closing on the property, Ben contacted Cannada and told him that the Rushes went ahead and purchased the property because they had given Buckner their word that they would do so, that they had "no definitive answer yet" regarding their aim to get an easement and use the land, and that the McNeill family should not "panic yet." In response, Cannada offered to pay the Rushes more than they paid for the land or to swap it for an equal portion of land on the periphery of the McNeill family farm. The Rushes were not willing to swap the forty-seven-acre tract of land for a tract of equal size. They wanted more than forty-seven acres in any possible swap or substantially more money than the $50,000 they had just paid Buckner.

After acquiring title from Buckner, the Rushes requested that the Jefferson County Tax Assessor recognize that the parcel of land included the original forty-seven acres and also additional accreted land. The additional acreage was recognized as accreted property by the Jefferson County Tax Assessor, and the record on appeal contains a "Jefferson County Rural Property Record Card," which contains a verified map, sectional plat, and record card from the Jefferson County Tax Assessor. This record card states, "4/17/2019 CGH ADDED ACCRETIONS TO ASSESSMENT AT REQUEST OF BEN RUSH." Further, the legal description provided by the assessor's office is "ALL NE ¼ S OF RIVER & ACCRETIONS 88.026 ACRES."

After the Rushes had purchased the land from Buckner, the McNeill family filed suit in the Jefferson County Circuit Court seeking to quiet title on the basis of adverse possession of the following land:

6

> All of the Northeast Quarter (NE1/4) South of the River in Section 29, Township 3 South, Range 10 West, and accretions, being 88.026 acres[.]

The legal description used by McNeill family in their petition matches the legal description of the land on file with the Jefferson County Tax Assessor, which was based on the updated description provided by Ben. Specifically, the McNeills sought to quiet title to the exact tract of land that Buckner purchased in the tax sale and that the Rushes purchased from Buckner, plus the additional acreage that Ben Rush represented to the Jefferson County Tax Assessor had been created by accretion.

The Rushes counterclaimed and sought to quiet title to the property they purchased from Buckner, specifically:

> All of the Northeast Quarter (NE1/4) South of the River located in Section 29, Township 3 South, Range 10 West of the 5th P.M., Jefferson County, Arkansas.

This description does not contain the additional accreted land. The Rushes also alleged promissory estoppel, claiming that they bought the property in reliance on Cannada's statement that he did not intend to pursue a claim for adverse possession. The Rushes further asked the court to grant them an easement so that they could access the property.

The McNeill family moved for summary judgment and attached numerous exhibits, including seventeen sworn affidavits in support of their claim for adverse possession. The Rushes filed a response, to which they also attached several exhibits. The court held a summary-judgment hearing on June 11, 2021.

On June 24, 2021, the Jefferson County Circuit Court entered an order granting the McNeill family's motion for summary judgment and quieting title to the disputed forty-seven-acre tract of land in favor of the McNeill family. Specifically, the circuit court found that the McNeill family met the common-law requirements for adverse possession from 1982 through

7

1995 and that they met the statutory requirements for adverse possession, pursuant to Arkansas Code Annotated section 18-11-106 (Repl. 2015), from 1995 through January 2019. The court also found that the McNeill family was entitled to summary judgment on the Rushes' counterclaim for promissory estoppel. The court found that the Rushes' claim for an easement was moot since the property now belonged to the McNeill family. The description of the property to which the court quieted title included the accreted land that Ben had caused to be added to the assessor's legal description. From the court's grant of summary judgment, the Rushes now appeal.

"Summary judgment should only be granted when it is clear that there are no genuine issues of material fact to be litigated, and the moving party is entitled to judgment as a matter of law." *City of Barling v. Fort Chaffee Redevelopment Auth.*, 347 Ark. 105, 112, 60 S.W.3d 443, 446 (2001); Ark. R. Civ. P. 56(c)(2). On appeal, we must determine "if summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of the motion leave a material fact unanswered." *Clark v. Progressive Ins. Co.*, 64 Ark. App. 313, 317–18, 984 S.W.2d 54, 57 (1998). We review such evidence "in the light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party." *Id.* at 317–18, 984 S.W.2d at 57. In deciding whether to grant summary judgment, it is inappropriate for a circuit court to weigh the evidence, determine credibility of witnesses, or to resolve conflicting testimony. *Turner v. Nw. Ark Neurosurgery Clinic, P.A.*, 84 Ark. App. 93, 105, 133 S.W.3d 417, 424 (2003).

Although we view evidence in the light most favorable to the party against whom the motion was filed, "[i]f the party moving for summary judgment makes a prima facie showing that no issues of fact exist, and the non-moving party fails to show that such issues do exist,

8

then the court must affirm the trial court's grant of a summary judgment." *Golden Tee, Inc. v. Venture Golf Schs., Inc.*, 333 Ark. 253, 259, 969 S.W.2d 625, 628 (1998). To show that issues of fact exist, the nonmoving "party must meet proof with proof and demonstrate the existence of a material issue of fact." *Wallace v. Broyles*, 331 Ark. 58, 66, 961 S.W.2d 712, 715 (1998). Further, summary judgment is appropriate in cases of adverse possession where the facts are undisputed, and the nonmoving party fails to submit competing affidavits. *Dye v. Anderson Tully Co.*, 2011 Ark. App. 503, at 7, 385 S.W.3d 342, 348.

The Rushes argue that the circuit court erred in granting summary judgment on the McNeill's adverse-possession claim because there are disputed issues of fact that should be determined by a jury. Arkansas adverse-possession law is a combination of common law and statute. To succeed on a claim for adverse possession, a petitioner must show by a preponderance of the evidence that he or she possessed the disputed property continuously for seven years and that the petitioner's possession was actual, open, continuous, hostile, exclusive, and accompanied by an intent to hold adversely and in derogation of the true owner. *In re Estate of Slaughter*, 2021 Ark. 199, at 7, 632 S.W.3d 746, 750. Proof of the claimant's acts of ownership are of such a nature as one would exercise over his property and would not exercise over the land of another is ordinarily sufficient proof of adverse possession. *Horton v. Taylor*, 2012 Ark. App. 469, at 9, 422 S.W.3d 202, 209. In 1995, the Arkansas General Assembly added as a requirement for proof of adverse possession an element that the claimant must prove color of title and payment of taxes on the contiguous property for seven years. Ark. Code Ann. § 18-11-106 (Repl. 2015). However, if the claimant's rights to the disputed property "vested before 1995, he need not comply with the 1995 statutory change." *Horton*, 2012 Ark. App. 469, at 9, 422 S.W.3d at 210.

The requirements of adverse possession are even more stringent for a trespasser without color of title. The trespasser must show actual possession to the extent of the claimed boundaries. *Fulkerson v. Van Buren*, 60 Ark. App. 257, 260–61, 961 S.W.2d 780, 782 (1998). "[T]here is every presumption that possession of land is in subordination to the holder of the legal title to the land. The intention to hold adversely must be clear, distinct, and unequivocal." *Id.*, 961 S.W.2d at 782.

Here, the court specifically found that the McNeill family met all the common-law requirements for adverse possession from 1982 through 1995 and all the statutory requirements from 1995 through 2019. Evaluating the court's grant of summary judgment on the McNeill's adverse-possession claim requires us to first determine whether the McNeills were acting with color of title when they occupied the property. The Rushes argue that the McNeills were trespassers not acting with color of title. As trespassers, the McNeill family would have to prove actual possession of the property to the extent of the claimed boundaries. *Fulkerson*, 60 Ark. App. at 260–61, 961 S.W.2d at 782. The Arkansas Supreme Court has adopted the following definition of color of title:

> Color of title is not, in law, title at all. It is a void paper, having the semblance of a muniment of title, to which, for certain purposes, the law attributes certain qualities of title. Its chief office or purpose is to define the limits of the claim under it. Nevertheless, it must purport to pass title. In form, it must be a deed, a will, or some other paper or instrument by which title usually and ordinarily passes.

*Bailey v. Jarvis*, 212 Ark. 675, 680, 208 S.W.2d 13, 15 (1948).

In the present case, the Rushes failed to obtain a ruling on their argument that the McNeill family acted as trespassers without color of title. The Rushes raised this issue in their response to the McNeills' motion for summary judgment, but the court's summary-judgment order does not state whether the McNeills were acting with color of title.

10

We note that the McNeill family was entitled to summary judgment whether or not they were found to have been acting with color of title. In support of their contention that they had color of title, the McNeills presented evidence that they held a 1974 deed describing land in section 29 that appears to include the forty-seven-acre tract. Moreover, the McNeills presented evidence that they thought the disputed piece of property was part of their family farm and treated it as such for decades. When Buckner asserted a claim to the land in 1982, the McNeill family responded that it belonged to them and was a part of their family farm. They also presented evidence that they used the land in a way that indicated their belief that they owned it: They posted the property to deter trespassers, leased it to others, removed timber crops from it, and enrolled it in government programs.

Alternatively, even assuming that the McNeill family was not acting with color of title and should be deemed trespassers, as the Rushes argue, the McNeill family presented uncontested evidence demonstrating continuous, open, and adverse possession of the property to the extent of the tract's claimed boundaries, and the Rushes failed to provide evidence to the contrary. Specifically, the McNeill family presented significant evidence that they fenced the land, farmed it, grazed it, hunted on it, used it to grow and gather pecans, and posted it against trespassers. The Rushes failed to meet proof with proof by presenting any evidence contesting the truth or accuracy of the McNeill family's assertions.

The Rushes also argue that genuine disputes of material fact exist regarding the description and location of the property in question. Specifically, they contend that there is a controverted factual issue as to whether the 1982 letters between Buckner and the McNeill family, along with the subsequent actions of both parties, were sufficient to put Buckner on notice that the McNeills were possessing the property openly and adversely because they note

slight differences in the McNeills' and Buckner's descriptions of the property in the letters exchanged in 1982. Both parties described the property as being west of the lake, but the McNeills described it as north or northwest of the lake, while the Rushes contend that the parcel of land at issue in this case is actually southwest of the lake. The Rushes also argue that the legal description of the property used by both parties throughout the case does not accurately reflect the parcel of land about which both parties provided testimony and evidence. The Rushes contend that these discrepancies amount to a disputed issue of material fact that should have barred summary judgment.

The Rushes are incorrect. The circuit court quieted title to a tract of land that, except for the addition of accreted property, matches the legal description of the property Buckner purchased at the tax sale, about which he corresponded with the McNeills in 1982 and which he then sold to the Rushes. The description of the property at issue in the present case also matches the description that Ben caused to be placed in the Jefferson County Tax Assessor's records when he requested that the assessor's office update the description to include accreted property. Notably, while the parties have not employed a land surveyor to locate the exact corners and boundaries of the property at issue, they do not dispute that the land is located on the McNeill family farm surrounded by other property owned and farmed by the McNeills, meaning that the testimony and evidence that the McNeills provided about their use of the land for the past forty years is not contingent on the specific legal description of the property.

The Rushes further contend that the 1982 letters were insufficient to put Buckner on notice of the McNeills' adverse possession because the McNeills described the property in their letters as being north or northwest of the lake, which the Rushes contend differs from the property's actual location southwest of the lake. This argument ignores the fact that

12

Buckner clearly understood that the McNeills were asserting ownership of the property he purchased at the tax sale. Buckner stated as much in his letter when he said, "I am afraid that we have a serious title problem concerning the disputed property . . . ."

The Rushes also claim that there are disputed issues of material fact as to the McNeill family's actual use of the property over the past forty years. On this point, the Rushes concede that the McNeills presented numerous affidavits supporting their open, continuous, and adverse use of the property since at least 1982. However, they claim that the McNeills' affidavits were self-serving by a party with an interest in the outcome of the litigation or were obtained from friendly neighbors, were vague and conclusory, and should not be given significant weight. In response to the McNeills' assertions that they denied Buckner access to the property, the Rushes claim that the McNeills do not know and cannot know that Buckner never accessed the property. The Rushes speculate that Buckner could have accessed it by water and might have been one of the trespassers that the McNeills admitted to having seen on the property from time to time. By calling into question the accuracy of the McNeills' assertion that they barred Buckner from the property, the Rushes contend that there remains a disputed issue of material fact as to whether the McNeills openly and adversely possessed the property against Buckner's claim of ownership. This argument is purely hypothetical since the Rushes failed to present the court with any evidence demonstrating that Buckner accessed the property, while the McNeills presented evidence that he did not.

We find no error in the circuit court's determination that the McNeill family was entitled to summary judgment on their claim for adverse possession. In their appellate arguments, the Rushes fail to differentiate between the McNeill's common-law adverse possession between 1982 and 1995 and their statutory adverse possession from 1995 until

2019. Instead, the Rushes are attempting to attack the McNeills' evidence of both common-law and statutory adverse possession by contesting the proof, calling the McNeills' affidavits self-serving and pointing out inconsequential discrepancies in the McNeills' description of the property. This is insufficient to defeat summary judgment. Once the moving party has established a prima facie entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. *Sellers v. Felton*, 2021 Ark. App. 247, at 3, 626 S.W.3d 121, 123. Here, the McNeills presented sufficient evidence to establish a prima facie claim for adverse possession, and the Rushes failed to meet proof with proof establishing a contested issue of material fact barring summary judgment. Therefore, we affirm the grant of summary judgment.

The Rushes also argue that the circuit court erred in granting summary judgment to the McNeills on the Rushes' promissory-estoppel claim. The Rushes alleged that the McNeills should be barred from obtaining title to the property through adverse possession because Cannada allegedly told Ben that Cannada had no intention of pursuing a claim for adverse possession. The Rushes assert that granting summary judgment to the McNeills on both the adverse-possession claim and the Rushes' counterclaim for promissory estoppel was reversible error because the promissory-estoppel counterclaim hinges entirely on a disputed issue of material fact—whether Cannada made the statement. We find no reversible error and affirm. Under Arkansas law, a plaintiff may establish promissory estoppel upon the showing of (1) the making of a promise; (2) the intent that the promise be relied upon; (3) actual reliance upon the promise; and (4) injustice resulting from a refusal to enforce the promise. 1 Howard W. Brill & Christian H. Brill, *Arkansas Law of Damages* § 17:14 (6th ed. 2014) (citing *Curtis Lumber Co., Inc. v. La. Pac. Corp.*, 618 F.3d 762, 780 (8th Cir. 2010)).

14

Even if we assume that Cannada made the disputed statement about not intending to pursue a claim for adverse possession, the Rushes have not established a prima facie claim for promissory estoppel because they have not demonstrated that they relied on Cannada's statement in their decision to buy the property. Ben testified in his deposition that he would still have purchased the property if Cannada had not stated that he did not intend to pursue adverse possession. Specifically, he was asked, "And so had Mr. Cannada not assured you or not said they had no plans of pursuing an adverse possession claim, you would not have bought this property?" and he responded, "Well, no, that's not necessarily true at all. The subject had not ever come up and I still had access—as long as I had access to the property, I would have probably most likely have bought it." Additionally, following Cannada's alleged statement, the McNeills expressed their clear intent to continue to claim and use the property. Cannada pleaded with the Rushes not to buy the property, expressed to them how important it was to the McNeills that the property remain a part of the family farm, and stated that they would give the Rushes access to the property only if forced to by the courts. Moreover, the Rushes were aware that they were purchasing the property with clear and specific exemptions from their warranty deed and title insurance for adverse possession. Finally, despite the fact that Cannada was only one member of the McNeill family to own property surrounding the disputed tract of land, the Rushes did not attempt to secure such a promise from other family members, leaving them open to other adverse-possession claims. We therefore affirm the circuit court's grant of summary judgment in favor of the McNeill family on the Rushes' claim for promissory estoppel.

Next the Rushes argue that the court erred by quieting title to the accreted land in addition to the original forty-seven acres that Buckner purchased at the tax sale and sold to

15

the Rushes. Accretion is the "gradual deposit and addition of soil along the bank of a waterbody caused by the gradual shift of the waterbody away from the accreting bank." *Swaim v. Stephens Prod. Co.*, 359 Ark. 190, 196, 196 S.W.3d 5, 8 (2004). It is well settled that when accretion land is formed by a gradual and imperceptible alteration in the land, the ownership of the land vests in the riparian owner "from whose shore or bank the water receded." *Id.* The McNeill family presented testimony and evidence of the accretion, including the Jefferson County Tax Assessor's revised property description reflecting the addition of accreted land to the original tract. We note that, while the Rushes now contest the addition of the accreted land, Ben caused the assessor's description of the property to be modified to reflect the added acreage, specifically noting that it was due to accretion. The Rushes now argue that the additional acreage "could be explained, at least in part, by avulsion as much as by accretion." Such an argument is insufficient to rebut the McNeill family's prima facie case that they are entitled to ownership of the additional land due to accretion. As discussed above, the Rushes had an obligation to meet proof with proof in order to survive summary judgment, and they failed to do so.

Finally, the circuit court properly found that the Rushes' request for an easement was moot once the circuit court quieted title to the disputed land in favor of the McNeill family. The Rushes asserted that Cannada promised to give them an easement to access the disputed tract of land, and Cannada and the McNeill family dispute that such a promise was ever made. The Rushes present this as another material issue of disputed fact that should have barred summary judgment. They also argue that, in ruling against them on this issue, the court made a credibility determination, which is improper in deciding a motion for summary judgment. On appeal, both parties present arguments regarding the evidence supporting their assertions

16

regarding whether Cannada did or did not promise the Rushes an easement. However, all of these arguments miss the point: the circuit court found the easement issue moot once it quieted title in favor of the McNeill family. The court, therefore, did not rule on whether Cannada promised the Rushes an easement. It simply determined that the Rushes have no need for an easement to reach a landlocked piece of property that they do not own. We hold that the circuit court did not err in finding that the easement issue is now moot.

Affirmed.

VIRDEN and GRUBER, JJ., agree.

*PPGMR Law, PLLC*, by: *R. Scott Morgan* and *M. Christine Dillard*, for appellants.

*Turner Law Firm*, by: *Kaleb M. Jones*; and *Thrash Law Firm, P.A.*, by: *Thomas P. Thrash* and *Will T. Crowder*, for appellees.