2010 Ark. App. 790

**DARDANELLE & RUSSELLVILLE RAILROAD, INC., Appellant**

v.

**CERTAIN UNDERWRITERS AT LLOYD'S, LONDON,** Appellee.

**No. CA 10–220.**

Court of Appeals of Arkansas.

Dec. 1, 2010.

Rehearing Denied Jan. 12, 2011.

Clayborne S. Stone, Williams & Anderson PLC, Little Rock, for appellant.

John Jarrod Russell and David Littleton, Anderson, Murphy & Hopkins, Little Rock, for appellee.

JOHN MAUZY PITTMAN, Judge.

This case involves the interpretation of a "claims made" insurance policy that appellee Certain Underwriters at Lloyd's, London issued to appellant Dardanelle and Russellville Railroad, Inc. Appellant sued appellee to establish coverage for appellant's liability to an individual who was injured while working for appellant. The circuit court granted summary judgment to appellee. Because genuine issues of material fact remain to be tried, we reverse and remand.

The policy period began November 10, 2003, retroactive to November 10, 1994, and ended November 10, 2004. Section I(b) of the policy provided:

b. Subject to a. above, this insurance applies to "bodily injury" and "property damage" only if:

(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

(2) The "bodily injury" or "property damage" did not occur before the Retroactive Date, if any, shown in the Declarations or after the end of the policy period;

(3) A "claim" for damages because of the "bodily injury" or "property damage" is first made against any insured, in accordance with paragraph c. below, during the policy period or any Extended Reporting Period we provide under SECTION V—EXTENDED PERIODS; and

(4) A "claim" for damages because of the "bodily injury" or "property damage" is not caused by:

(a) An "occurrence," or

(b) A circumstance that might result in a "claim" of which the insured has given notice to any other insurer prior to the effective date of the policy period of this insurance.

c. A "claim" by a person or organization seeking damages will be deemed to have been made at the earlier of the following times:

(1) When notice of such "claim" is received and recorded by any insured or by us, whichever comes first; or

(2) When we make settlement in accordance with paragraph 1.a. above.

All "claims" for damages because of "bodily injury" arising out of the same "occurrence" to the same person, including damages claimed by any person or organization for care, loss of services, or death resulting at any time from the "bodily injury" will be deemed to have been made at the time the first of those "claims" is made against any insured.

All "claims" for damages because of "property damage" arising out of the same "occurrence" causing loss to the same person or organization will be deemed to have been made at the time the first of those "claims" is made against any insured.

The policy imposed the following notification obligations on appellant:

a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which result in a "claim." To the extent possible, notice should include:

(1) How, when and where the "occurrence" or offense took place;

(2) The names and addresses of any injured persons and witnesses; and

(3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

Notice of an "occurrence" or offense is not notice of a "claim."

If you have announced to all of your "employees" that all "occurrences" or offenses must be reported and have established a reasonable procedure for doing so, knowledge of "employees" shall not be considered to be knowledge of the insured until you, an "executive officer," partner or other persons employed by you in: supervisory capacity shall have received actual notice of such "occurrence" or offense.

Subject to the provisions of e. below, if failure to report promptly was due to the reasonable belief that the loss was not covered by this policy, your insurance will not be affected.

b. If a "claim" is made or "suit" is brought against any insured or you are aware of any "occurrence" of [sic] offense which may result in a "claim," you must:

(1) Immediately record the specifics of the "claim" or "suit" and the date received; and

(2) Notify us as soon as practicable.

(3) Notification, including all relevant documents and information, of a "claim" or "suit" as well as notification of an "occurrence" or an offense which may result in a "claim" must be sent to: Railway Claim Services, Inc., 52 South Main Street, Lexington, TN 38351, Telephone No. 1–800–786–5204, Fax. No. 1–901–967–1788.

You must see to it that we receive written notice of the "claim" or "suit" as soon as practicable.

c. You and any other involved insured must:

(1) Immediately send us copies of any demands, notice, summonses or legal papers received in connection with the "claim" or "suit";

$I_4$(2) Authorize us to obtain records and other information;

(3) Cooperate with us in the investigation or settlement of the "claim" or defense against the "suit";

(4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

d. No insured will, except at the insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

e. Even if you or any other insured do not believe that the event would lead to a "claim" that would be covered by this policy, you or any insured must notify us as soon as reasonably possible if any "occurrence" or offense results in any of the following types of "bodily injury" or action:

(1) Fatal injuries;

(2) Brain or spinal injuries;

(3) Amputation of an arm, leg, hand or foot;

(4) 50% or more loss of use of an arm, leg or eye;

(5) Severe burns;

(6) Serious loss of use of any body function;

(7) Hospitalization of 60 days or more;

(8) Sexual abuse, molestation or assault;

(9) Pollution;

(10) Class action litigation;

(11) Stroke or heart attack;

(12) Occupational disease; or

(13) Back injuries where the disability exceeds 6 months.

### 3. Legal Action Against Us

You may not bring "suit" or legal action against us to recover a "claim" unless the terms of this policy have been complied with. Nor can "suit" be brought against us until the amount of a "claim" against you has been determined or agreed upon.

The policy defined "claim" as:

a written demand upon the insured for compensatory damages or services because of covered injury to an individual person or an individual organization. A written demand shall include but not be limited to any summons or paper instituting "suit" or arbitration proceedings against the insured. "Claim" does not include reports of accidents, incidents or offenses which may give rise to a "claim" under this policy. All "claims" for covered injury to an individual person or an individual organization which results from the same incident shall be deemed to be one "claim." A "claim" shall be deemed to have been made when notice of such "claim" is received by us or Railway Claim Service.

The dispute over coverage involves a back injury that Charles Mills incurred while employed by D & R in October 2001. On November 9, 2001, Mills submitted a proof-of-loss form to D & R's medical insurance provider, CIGNA, acknowledging that he also had Federal Employee Liability Act (FELA) coverage. Norma Hill, with D & R, notified Carol Jones, a benefit analyst with CIGNA, of Mills's injury on January 14, 2002. In her response dated January 24, 2002, Jones stated that, because the policy with CIGNA was an "excess policy," CIGNA would need D & R's statement of FELA benefits paid.

On January 25, 2002, Margaret Rietkerk, of Eaton & Eaton Insurance Brokers, wrote a memo to Norma Hill, stating:

I have contacted the billing department at Southwest Regional Medical Center and advised them a check in the amount of $3,634.87 will be issued to them from CIGNA for the occupational injury claim on Mr. Mills. That leaves an outstanding balance of $1,000. CIGNA has indicated that is the deductible amount. You need to deal with the employee and/or facility regarding this amount. Southwest Regional Medical Center did not show this claim as being related to an occupational injury. You need to speak with the General Manager to see what instructions employees are given when they are injured at work.

If Mr. Mills is sending you a $2,000 claim from Southwest Regional Medical Center, please do not send it to me. When I talked with the medical center, they indicated they were billing Assure-Care directly since they did not show that claim as being related to a work injury either!! It is Mr. Mills's responsibility to make certain he is giving the provider the correct information and it is the employer's responsibility to make certain the employees have the correct information pertaining to their occupational coverage and their regular health plan coverage.

. . . .

If any claims are submitted to our office, they must be clearly marked that they are occupational claims.

I have forwarded the claim you sent me this morning for Mr. Mills, (from Otter Creek Family Clinic in the amount of $200) along with his prescriptions, to AssureCare, for processing.

If an employee has regular medical claims which are covered under Assure-Care, the employee is responsible for

making certain the provider has the AssureCare billing address and the employee should be checking with the provider to make certain the claim has been billed. Our office can assist if there is a problem in getting the claim processed but only after the employee has first taken responsibility to check on his/her claim.

In the application for coverage, appellant did not inform appellee of Mills's injury when asked to provide loss information for the past three years. Mills filled an FELA suit against D & R in Saline County Circuit Court on January 2, 2004. D & R notified appellee, through Railway Claims Services, Inc., of Mills's complaint on January 9, 2004. On November 10, 2004, Lloyd's denied coverage because Mills's claim was received and recorded as an occupational injury claim by D & R on or before January 25, 2002, before the policy was effective. Appellant sued appellee in the Pope County Circuit Court on February 10, 2009, asserting that appellee had a duty to defend and to pay the sums that appellant became legally obligated to pay Mills. In its counterclaim, appellee stated that appellant was aware of Mills's injury when it filled out the policy application but failed to notify it of the injury; that, if it had known of Mills's injury, it would have either declined the application or issued an endorsement excluding that claim; and that it was entitled to rescission. Appellee asked the court to declare that appellant could make no claim under the policy because the date of claim predated the policy; that appellant had a duty to provide notice of the claim to appellee; and that appellant had an obligation to completely and honestly answer all questions in the application for insurance.

Appellee moved for summary judgment. It attached exhibits to that motion, including Mills's proof-of-loss form dated November 9, 2001; the January 14, 2002, letter from Norma Hill to Carol Jones; Jones's January 24, 2002, letter to Mills; the memorandum from Margaret Rietkerk to Hill; and appellant's responses to interrogatories. Appellee argued that it was undisputed that it did not receive notice of Mills's claim until after Mills filed the lawsuit in January 2004 and that appellant was aware of the claim as early as November 9, 2001. Noting the importance of notice to the insurer issuing a "claims made" policy, appellee stated that the policy unambiguously provided that a claim "will be deemed to have been made ... when notice of such claim is received and recorded by any insured or by us, which ever comes first." Appellee argued that D & R first received and recorded notice of the written demand for damages because of a covered injury on November 9, 2001, when Mills signed the proof-of-loss form to CIGNA, or at the very latest, before January 25, 2002, as evidenced by the January 14, 2002 letter from Hill to Jones; Jones's January 24, 2002, letter to Hill; and Rietkerk's January 25, 2002, memorandum to Hill. In any event, appellee argued, it could not be reasonably questioned that D & R received notice of Mills's claim prior to the beginning of the policy period on November 10, 2003. Appellee also relied on the policy's provision that there would be no coverage if D & R gave notice to any other insurer, including a medical insurance carrier like CIGNA, of a claim prior to the effective date of the policy.

D & R moved for summary judgment on September 8, 2009. It argued that the first claim made by Mills was the January 2, 2004, lawsuit he filed in Saline County and that the policy should be construed liberally in favor of the insured and strictly against the insurer. In support of its motion, appellant filed the affidavit of its general manager, Daniel Robbins; Mills's complaint; the letter declining coverage from Dave Gardner with Railway Claim

Services, Inc., to Robbins dated November 10, 2004; a letter from Tim White of Brown & Brown Insurance to Robbins dated September 27, 2006; a letter from Gardner to William Lacy with the Arkansas Insurance Department on October 25, 2006; and appellee's responses to interrogatories and requests for production of documents.

In his affidavit, Daniel Robbins stated:

4. In October 2001, Steve Hames, a Project Supervisor for D & R, notified D & R of a minor incident involving Charles Mills but did not relay any specific information related to the incident.

5. Beginning on November 9, 2001, Mr. Mills received medical treatment for a ruptured disc. Mr. Mills had medical insurance through D & R's health insurance plan through the Consolidated Transportation Insurance Trust Fund. Mr. Mills was the insured under this medical insurance plan.

6. D & R notified its third-party administrator Carol Jones and Cigna and Margaret Rietkerk with Eaton & Eaton of Mr. Mills' medical insurance claims. Cigna administered the Consolidated insurance policy under which Mr. Mills was the insured.

7. Neither the Consolidated Transportation Insurance Trust Fund, Cigna, or Eaton & Eaton have never [sic] been D & R's insurer for claims allegedly arising from D & R's negligence or wrongdoing.

8. Until January 2, 2004, Mr. Mills never demanded compensatory damages or services because of his injury in October 2001.

9. Until January 2, 2004, D & R had no reason to believe that Mr. Mills would seek compensatory damages or services for his injury in October 2001.

10. On January 2, 2004, Mr. Mills filed a complaint against D & R in Saline County, Arkansas, alleging that he was injured due to D & R's negligence while working for D & R.

11. A true and correct copy of Mr. Mills' January 2, 2004 complaint is attached to this affidavit as Exhibit Robbins–1.

12. I received Mr. Mills' complaint on January 8, 2004. The next day, I notified insurance agent Tim White, of Brown & Brown Insurance, about the complaint and the claims alleged in the complaint. Mr. White immediately filed a claim with Lloyd's under the "claims made" policy then in effect.

13. On November 10, 2004, an agent for Lloyd's notified me by letter that Lloyd's was denying coverage to D & R.

On November 16, 2009, the circuit court denied appellant's motion for summary judgment and granted summary judgment to appellee. The court rejected appellee's interpretation of the policy that excluded coverage for circumstances that result in notice to "any other insurer," including a medical care provider, of any injury prior to the effective date of the policy. It stated that D & R was aware of an occurrence which may result in a claim following Mills's injury and explained its award of summary judgment as follows:

c. Lloyds next contends that coverage should be denied because D & R failed to provide notice in accordance with Section IV 2. a.—e. of the policy. This section of the policy provides for D & R's duties in the event of occurrence, offense, claim or suit.

IV 2. a. "You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which result in a "claim."

"Occurrence" as defined in the policy "means an accident, including continuous or repeated exposure to substantially the same general harmful conditions or

when applied to an "Act of God," a single event."

Section IV b. is determinative of the issues in the interpretation of this policy and their respective rights and duties and provides as follows:

b. "If a "claim" is made or "suit" is brought against any insured or *you are aware of any "occurrence" of offense which may result in a "claim," you must:*

(2) Notify us as soon as practicable.

This provision placed upon D & R a duty to notify Lloyds of Mills injury as this was an "occurrence" of which D & R was aware that might result in a claim. This is evident by the letters and correspondence between Hill, Jones and Reitkerk making reference to Mills indication of an FELA claim in the original proof of loss form to Cigna. The severity and extent of the bodily injury suffered by Mills is also evidence that D & R was aware that the occurrence might result in a claim, and triggered part b. 2. e. of this section which provides:

e. "Even if you or any other insured do not believe that the event would lead to a "claim" that would be covered by this policy, you or any insured must notify us as soon as reasonably possible if any "occurrence" or offense results in any of the following types of "bodily injury" or action:

(6) serious loss of use of any body function;

(13) Back injuries where the disability exceeds 6 months."

Mills suffered a ruptured disc that fits these conditions and placed upon D & R the duty to notify Lloyds.

The definition of "claim" states that "claim does not include reports of accidents, incidents or offenses which may give rise to a "claim" under this policy." This qualification of the term "claim" sets the requirement of what

constitutes a claim and D & R's duties under the policy apart from its' [sic] duties in the event of an "occurrence" that may result in a claim. D & R's duty to notify of this occurrence arose at the time the policy was issued and breached this notice obligation under the policy. Lloyds reliance on these particular notice provisions are reasonable and not inconsistent with D & R's duties to notify when an actual "claim," written demand for compensatory damages, is made against it.

Appellant filed a timely notice of appeal.

██ We approve the granting of a motion for summary judgment only when the state of the evidence portrayed by the pleadings, affidavits, discovery responses, and admissions on file is such that the nonmoving party is not entitled to a day in court, *i.e.,* there is no genuine issue of material fact remaining, and the moving party is entitled to judgment as a matter of law. *Ison v. Southern Farm Bureau Casualty Co.,* 93 Ark.App. 502, 221 S.W.3d 373 (2006). Also, we normally view the evidence in the light most favorable to the party resisting the motion and resolve any doubts and inferences against the moving party. *Id.*

Appellant argues that we should reverse the summary judgment for appellee because it owed no duty to notify appellee of an occurrence that it did not reasonably believe would result in a claim; in order for the notice requirement to be triggered, a particular type of occurrence would have to be involved, as set forth in Section 2(e), such as "serious loss of use of any body function" and "[b]ack injuries where the disability exceeds 6 months." Appellant argues that there was no evidence in the record that Mills suffered either of those types of injuries. It further argues that, even if Section 2(e) did apply, the circuit court did not find that appellant failed to

give notice as soon as practicable; that it essentially rewrote the policy to require appellant to give notice of an occurrence at the very moment that the insurance policy went into effect; and that there was no evidence that D & R's notice to Lloyd's of the occurrence of the claim was not reasonable. Appellant argues that, under the circuit court's reasoning, there would be no coverage unless an insured informed the insurer of every single accident, no matter how minor or stale.

It is, therefore, necessary to construe the insurance policy. The general rule is that the pleadings against the insured determine the insurer's duty to defend. *Ison v. Southern Farm Bureau Cas. Co., supra.* The duty to defend is broader than the duty to pay damages, and the duty to defend arises where there is a possibility that the injury or damage may fall within the policy coverage. *Id.* The insurer must defend the case if there is any possibility that the injury or damage may fall within the policy coverage. *Id.* In reviewing an insurance policy, the appellate court follows the principle that, when the terms of the policy are clear, the language in the policy controls. *Id.* The language in an insurance policy is to be construed in its plain, ordinary, popular sense. *Id.* If a policy provision is unambiguous, and only one reasonable interpretation is possible, the court will give effect to the plain language of the policy without resorting to rules of construction. *Id.* Language is ambiguous if there is doubt or uncertainty as to its meaning and it is fairly susceptible to more than one equally reasonable interpretation. *Id.* If the policy language is ambiguous, the policy will be construed liberally in favor of the insured and strictly against the insurer. *Id.* Whether the language of a policy is ambiguous is a question of law to be resolved by the court. *Id.* If ambiguity exists, parol evidence is admissible and the meaning of the ambiguous term becomes a question for the fact-finder. *Id.* Contracts of insurance should receive a practical, reasonable, and fair interpretation consonant with the apparent object and intent of the parties in light of their general object and purpose. *Id.*

A "claims-made" policy provides coverage only if a claim is presented during the policy period, in contrast to an "occurrence" policy, which provides coverage if the event insured against takes place within the policy period, regardless of when the claim is presented. *Campbell & Co. v. Utica Mutual Insurance Co.,* 36 Ark.App. 143, 820 S.W.2d 284 (1991). A "claims-made" policy is designed so that the insurer can more accurately predict the limits of its exposure and the premium needed to cover the risk undertaken; the benefit to the insured is a lower premium than would be necessary in an occurrence policy. *Id.* The basic difference between these types of policies is that a "claims-made" policy provides retroactive coverage and no prospective coverage at all; an "occurrence" policy provides prospective coverage and no retroactive coverage at all. Steven Plitt et al., 1 *Couch on Insurance* § 1:5 (3d ed. 2009).

Notice is critical to the insurer in a "claims-made" policy because it not only gives the insurer an opportunity to investigate but also defines the very risk the insurer contracted to undertake. *Campbell & Co. v. Utica Mutual Insurance Co., supra.* The general rule applicable to "occurrence" policies, which requires that an insurer show that it was prejudiced by lack of notice, is based on the reasoning that the purpose of the notice requirement is to give the insurer an opportunity to investigate; requiring a showing of prejudice ensures that an insured's rights are not forfeited unless the insurer shows that it did not have an opportunity to investigate and was, therefore, prejudiced. *Id.*

Although there are legitimate purposes for applying the notice/prejudice rule to a notice provision in an "occurrence" policy, those purposes do not always apply with equal force to notice provisions in a "claims-made" policy, as we concluded in *Campbell, supra:*

> Because the notice requirement defines the coverage contracted for in a claims-made policy and is a condition precedent to coverage, we hold that the insurer is not required to demonstrate prejudice caused by the untimely filing of notice under a claims-made policy such as the one in this case.

36 Ark.App. at 150, 820 S.W.2d at 288.

It is clear that appellant knew of Mills's occupational injury and his application for medical benefits by January 2002, at the latest, which was two years before it provided notice to appellee. Nevertheless, the circuit court erred in awarding summary judgment to appellee. Robbins stated in his affidavit that appellant had no reason to believe that Mills would seek compensatory damages or services for his injury until January 2, 2004. We also cannot say, as a matter of law, that appellant's delay in notifying appellee, from the beginning of the policy on November 10, 2003, to January 9, 2004, was not as soon as practicable. The circuit court further erred in relying on Sections 2(e)(6) and (13) because it was not established that Mills suffered a serious loss of use of any body function or a disability exceeding six months.

Reversed and remanded.

GRUBER and GLOVER, JJ., agree.