SHELTER MUTUAL INSURANCE CO. *v.*
Richard William PAGE and Brenda Gilbert

93-1141                                              873 S.W.2d 534

Supreme Court of Arkansas
Opinion delivered April 18, 1994

*Compton, Prewett, Thomas & Hickey, P.A.*, by: *Floyd M. Thomas, Jr.*, for appellant.

*Robert L. Depper, Jr.*, for appellee.

STEELE HAYS, Justice. This appeal involves the "cooperation clause" of a motor vehicle liability policy. The trial court held the clause was not breached by the failure of the insured to cooperate with the insurer. We agree with the trial court.

Shelter Mutual Insurance Company is the appellant. Richard Page and Brenda Gilbert are the appellees. On August 8, 1988, Brenda Gilbert was injured in a collision with a car driven by Richard Page. The accident occurred in Columbia County, Arkansas. Page was insured by Shelter. Page contacted Shelter promptly after the accident and provided the details.

Brenda Gilbert filed suit against Page on August 7, 1991. Gilbert was unable to obtain personal service on Page so a warning order was published and Page was notified by constructive service. There is no dispute as to the method of service. Page never answered the complaint and he was not subsequently located.

Shelter moved to intervene, the motion was granted and subsequently the trial court found that Page was in default and was liable for the injuries sustained by Mrs. Gilbert. Shelter defended by claiming Page had breached the policy's cooperation clause by failing to keep Shelter informed of his whereabouts.

The trial court found that Page had not breached the cooperation clause and that Shelter had suffered no prejudice. Mrs. Gilbert was awarded damages of $15,000. Shelter appeals from the judgment, contending the trial court erred in finding that Page had not breached the cooperation clause.

Shelter argues Gilbert was not diligent in pursuing her claim against Page because she did not file her suit until one day prior to the running of the statute of limitations, and "the record is entirely bereft of any attempts" by Gilbert to inform Shelter she had been injured and expected compensation. Shelter insists it made reasonable attempts to locate Page after the suit was filed and it should be released due to Page's breach of the cooperation clause.

In response, Gilbert argues the burden was on Shelter to present evidence that Page's absence was for "no good reason." Further, since the hearing was on the issue of damages only, Shelter was not prejudiced by Page's absence at trial, and, even if it were, Shelter invited the prejudice by not investigating the accident thoroughly at the time it occurred and by failing to act upon publication of the warning notice. Finally, Gilbert argues Shelter was not prejudiced since it participated fully at the hearing and cross-examined all witnesses on the issue of damages.

As to Shelter's argument that Gilbert did not act diligently in filing her suit against Page, Gilbert points out that Shelter did not raise this issue below. We will not consider an argument made for the first time on appeal. *Dotson* v. *Madison County, Arkansas*, 311 Ark. 395, 844 S.W.2d 371 (1993).

Shelter cites *Fireman's Ins. Co. of Newark, New Jersey* v. *Cadillac Ins. Co.*, 13 Ark. App. 89, 679 S.W.2d 821 (1984), as supporting its position. There, the Court of Appeals affirmed a lower court's finding that the insured's failure to appear and defend a suit in negligence before a jury constituted a material breach of the policy. That case is distinguishable from the case at bar in that in *Fireman's* the negligence suit was tried on both liability and damages, and before a jury rather than a judge with the jury awarding both compensatory and punitive damages. There the insurer had located the insured, provided

him with transportation to the trial and compensation for time off from his job but the insured failed to appear at trial. The court noted that the insured's attitude was one of "reluctant cooperation" throughout and held the insured "lacked good reason for his absence from trial." Finally, the court noted that the failure of the insured to appear undoubtedly had an "intangible effect upon the jury."

Shelter also cites *Indemnity Ins. Co. of North America* v. *Smith*, 197 Md. 160, 78 A.2d 461 (1951). It, too, is distinguishable. In that case the insured was informed that a suit had been filed and the insured disappeared. The insurer employed the services of an investigator in an unsuccessful attempt to locate the insured prior to trial. The cooperation clause in *Smith* was similar to this one. In finding that the insured breached the clause, the court stated:

> It is thus a well settled rule that to relieve an insurer of liability on the ground of lack of cooperation, discrepancies in statements made by the insured must be made in bad faith and must be material in nature and prejudicial in effect.
>
> ****
>
> The insured under a liability policy containing a cooperation clause is obligated to assist in good faith in making every legitimate defense to a suit for damages. If he refused to give the information which the insurer needs to make the defense, or absents himself so that his testimony cannot be obtained, recovery on the policy should be denied, if the insurer acts with good faith and diligence.
>
> ****
>
> We recognize that two questions may arise when the insured has left the State: (1) Was the insured guilty of bad faith in leaving? and (2) Did the insurer use reasonable diligence in trying to locate the insured to procure his attendance at the trial?

*Id.* at 463.

Shelter also cites *Peters* v. *Saulinier*, 351 Mass. 609, 222 N.E.2d 871 (1967). There, the insured was not the owner of the

policy but one who was an insured under the terms of the policy. The insured did not report the accident to the insurer as required. After the insurer was informed of the accident later by the policyholder, its investigators found the insured, but he disappeared again. In an attempt to relocate him, the investigators found the insured's mother but she was unaware of his whereabouts. Finding that the insurer had exercised diligence and good faith in attempting to obtain the insured's appearance at trial, the court stated:

> An insurer is not bound to keep in touch with each insured while waiting for a case to be reached on a trial list. It is for the named insured and other insured who have benefited from the policy's protection to keep themselves reasonably accessible after an accident in which they have participated.

*Id.* at 874.

In *U.S. Fidelity & Guaranty Co.* v. *Brandon*, 186 Ark. 311, 53 S.W.2d 422 (1932), this court first addressed an alleged breach of a cooperation clause. The insured told the insurer four days before trial that he would be present but he failed to appear. Finding the insurer had presented "no good reason" why the insured did not make an appearance, we held "it was the duty of the insurance company in this action to go further than showing [the insured's] mere absence from the trial in order to show lack of cooperation, and to show the reason for such absence." *Id.* at 315.

In the case at bar, Shelter's cooperation clause reads in part as follows:

> In the event of an accident or loss, notice must be given to us promptly. The notice must give the time, place and circumstances of the accident or loss, including the names and addresses of injured persons and witnesses.
>
> ****
>
> A person claiming coverage under this policy must also:
>
> (1) Cooperate with us and assist us in any matter concerning a claim or suit;

(2) Send us promptly any legal papers received relating to any claim or suit[.]

We regard the holding in *Brandon* as consistent with the majority of jurisdictions on this issue. First, the burden of proof is on the insurer to show a breach of the cooperation clause. 14 Rhodes, *Couch on Insurance*, § 194 (Second ed. 1982); *Pennsylvania Threshermen and Farmer's Mutual Casualty Insurance Company* v. *Owens*, 238 F.2d 549 (4th Cir. 1956). Second, there is a two-step approach under the law in determining a breach of the cooperation clause when it involves the absence of the insured at trial. The law requires due diligence on the part of the insurer to locate the insured or to find the reason for their absence. *Couch, supra*, § 192; *Pennsylvania Threshermen, supra*. An excerpt from the opinion in *Pennsylvania Threshermen* is often quoted:

> The problem of non-cooperation has a dual aspect: not only what the insured failed to do, but what the insurer on its part did to secure cooperation from an apathetic, inattentive or vanished policy holder, must be considered. Liability insurance is intended not only to protect the insured, but also to protect members of the public who may be injured through negligence. Indeed, such insurance is made mandatory in many states. It would greatly weaken the practical usefulness of policies designed to afford public protection if it were enough to show mere disappearance of the insured without proof of proper efforts by the insurer to locate him.

Here, the evidence shows that Page reported the accident in a timely manner and there is no allegation that Page failed to disclose the required information fully and accurately. Paul Whitley, Shelter's agent in Columbia County, testified he issued the policy for Page in 1987 and 1988, and that Page contacted him about the accident. Whitley testified he asked Page to "always keep me informed of where he was." After Page reported the accident, Whitley's next and last contact with the family was January 18, 1989, when Page's wife wanted changes in their policies. Thereafter, Page's policy lapsed. Following the lapse of the policy, a postcard informing Page of that fact was sent to Page's last address and the postcard was not returned to Whitley. Whitley testified that he drove by the Page residence frequently. At

one point in time the house was empty and then other people were living there. Whitley said he was first aware of Gilbert's suit in January 1991 or 1992 when he received a call from Shelter's attorney. Whitley knew Page worked for Bradham Oil Company while he lived in Columbia County. Finally, Whitley testified that while he usually looked at the classified ads in the *Banner News*, he could not say whether he noticed the warning order to Page.

There is no evidence that Shelter investigated the accident at the time it occurred, or that it attempted to locate Page through his employer after it was informed of the suit. There is no evidence that Shelter did anything other than try to call Page at his previous address or drive by his former house.

Contrary to Shelter's argument, the evidence is it merely called its agent and asked if he knew where Page was. From January of 1992, when Shelter first became aware of Gilbert's suit, until the hearing on May 4, 1993, the record as abstracted is devoid of any efforts by Shelter to locate Page. Because Shelter failed in its burden to show that it made diligent and good faith efforts to locate Page and failed to show that Page's absence was attributable to an effort to avoid trial, the trial court was correct in finding that Page did not breach the cooperation clause. We need not reach the question of prejudice.

Affirmed.