Sheila Lynette ISON *v.*
SOUTHERN FARM BUREAU CASUALTY COMPANY
and Farm Bureau Mutual Insurance Company of Arkansas, Inc.

CA 05-313                                                    221 S.W.3d 373

Court of Appeals of Arkansas
Opinion delivered January 11, 2006

*Huckabay, Munson, Rowlett & Moore, P.A.,* by: *John E. Moore* and *Sarah E. Greenwood,* for appellants.

*David A. Hodges,* for appellee.

JOHN MAUZY PITTMAN, Chief Judge. This is an appeal from a summary judgment entered by the Pulaski County Circuit Court for appellees Southern Farm Bureau Casualty Insurance Company and Farm Bureau Mutual Insurance Company of Arkansas, Inc., declaring that appellees have no duty to defend appellant Sheila Ison in her individual capacity and as her son's parent, or to pay benefits for damages caused by her son in an accident on March 8, 2003. The

circuit judge based his decision on his ruling that, as a matter of law, appellant's son's use of the vehicle was without permission. We agree and affirm the award of summary judgment to appellees.

After Mrs. Ison and her former husband, Gordon Brown, were divorced, they shared joint custody of their son. Mrs. Ison remarried, and her husband, Richard Ison, had an auto insurance policy with appellees. Appellant's son had a driver's permit, but did not have a license, and was not a named insured or driver on either of his parent's insurance policies. Under the "Bodily Injury" and "Property Damage" subsection of the "Auto Liability" section, the Isons' policy stated:

> **We** will pay damages for **bodily injury** and **property damage you** are legally obligated to pay, except **punitive** damages, caused by an accident, and arising out of the ownership, maintenance, and use of **your auto**. For the purpose of this coverage, the words "**covered person(s)**" include any members of your household and any person or organization legally responsible for the use of **your auto** with **your** permission.

The policy defined "covered person" as "the persons and organizations specifically indicated as entitled to protection under the coverage being described."

In the "Auto Liability" section, the "Coverage Extensions" subsection provided in relevant part:

> When **your** policy insures a **private passenger auto** for Bodily injury and Property Damage Liability Coverage, **we** will provide those same coverages for the use of certain other **private passenger autos**.
>
> 1. Use of Other **Private Passenger Autos**.
>
> Coverage applies to **you** or dependent relatives living in **your** household while using another **private passenger auto**. However, the **private passenger auto** cannot be:
>
> a. owned by **you** or dependent relatives of **your** household; or
>
> b. furnished or available for regular use by **you** or dependent relatives of **your** household.

. . . .

These coverage extensions do not apply to accidents:

1. that involve any **auto you** are driving without permission that is stolen or is reasonably suspected to be stolen . . . .

Under the "Coverage Exclusions" section, the policy stated:

**We** will not pay for:

1. **bodily injury** or **property damage** caused by intentional acts committed by or carried out at the direction of **you** or any other **covered person**. The expected or unexpected results of these acts or directions are not covered;

. . . .

13. **bodily injury** or **property damage** while **you** or anyone using **your auto**, with **your** permission, is involved in the commission of a felony; or while any such person is seeking to elude lawful apprehension or arrest by any law enforcement official . . . .

On March 8, 2003, while appellant's son, aged fifteen years, was at his father's house, he learned that his girlfriend was pregnant. Distraught, he took an overdose of his medicine for attention-deficit disorder, his stepmother's antidepressants, and some nonprescription medicine; took the keys to his father's pickup truck; slashed the tires on the family's other vehicle; drove in his father's truck to a family member's house, where he stole some guns; led the police on a high-speed chase; and crossed the median and drove into the opposite lane of traffic on Interstate 30, causing an accident involving Sonia Rogers and James Rogers (now deceased).

Mrs. Rogers, individually, and as Administratrix of the Estate of James Rogers, filed a lawsuit against Mr. Brown and Mrs. Ison, individually and as their son's parents, in the Saline County Circuit Court for damages caused by the accident. Allstate Insurance Company, Mr. Brown's insurer, refused to defend Mrs. Ison, who had signed as the responsible party for the son's driver's permit. With a reservation of rights, appellees agreed to provide her with a limited defense in that lawsuit.

Appellees filed this action against Mrs. Ison and Mr. Brown, individually and as their son's parents, and Mrs. Rogers, individually and as administratrix of the Estate of James Rogers, on May 19,

2004, seeking a declaratory judgment stating that they had no duty to defend or to provide coverage for the accident on the grounds that appellant's son was not a permissive driver; that there was no coverage for accidents involving an auto driven without permission or that was stolen; that damages caused by intentional acts were excluded from coverage; and that damages incurred while the insured or anyone using the automobile with permission was involved in the commission of a felony or seeking to elude lawful apprehension or arrest by any law enforcement official were also excluded. Mrs. Ison, individually and as her son's mother, filed a counterclaim against appellees requesting a declaration that they were contractually bound to provide her with a defense to Mrs. Rogers's action and to provide coverage for any damages awarded. In his answer, Mr. Brown admitted that his son took his vehicle without permission.

Appellees moved for summary judgment, arguing that the policy conditioned coverage on the permissive use of a vehicle and unambiguously excluded coverage for intentional acts and for accidents occurring during flight from law enforcement officers. In support of their motion, appellees filed a certified copy of the insurance policy in effect at the time of the accident and a copy of Mrs. Rogers's complaint in the Saline County Circuit Court. In their brief, appellees argued that the insurance policy's initial statement of coverage did not apply because Mrs. Ison's automobile was not involved in the accident; that the coverage extension, which gave the same coverage to a dependent relative living in the insured's household while using another private passenger automobile, did not apply because appellant's son was not living in her household when the accident occurred and was not using the other automobile with permission; that the coverage extension did not apply to accidents involving stolen vehicles; that the policy excluded from coverage bodily injury or property damage caused by intentional acts; that the policy also excluded bodily injuries occurring "while you or anyone using your auto, with your permission, is involved in the commission of a felony . . . or while any such person is seeking to elude apprehension or arrest by any law enforcement official"; that, after the accident, appellant's son was charged with felony fleeing, criminal mischief, reckless driving, possession of a firearm, and the unauthorized use of a vehicle and was found guilty of fleeing; and that appellees had not agreed to protect Mrs. Ison from liability she assumed by signing her son's

application for a driver's permit. In opposition to appellees' motion for summary judgment, Mr. Brown filed a copy of his deposition.

Mrs. Ison moved for partial summary judgment on October 20, 2004, requesting a determination that appellees owed her a defense with independent counsel of her choosing. She filed copies of Mrs. Rogers's first amended complaint and appellees' responses to her interrogatories and requests for production of documents, including copies of her March 16, 2004 statement to appellees' investigator, Jason Grady, and appellees' March 22, 2004 letter to her denying coverage but agreeing to provide her with a limited defense (its reservation of rights).

At the conclusion of the hearing on the motions, the circuit judge stated:

> From my reading of everything before me, I do not see how a jury could conclude that there was permission to drive the vehicle under these facts. I guess to state it more clearly, I do not know that there is sufficient evidence from which a jury could conclude that there was permission.
>
> If I get to that point, I do not know whether a ruling on other issues is necessary or not. I do not believe what I will call the "you" argument for lack of a better means to articulate it. I do not believe that argument applies. I think there is language in here that says that whatever coverage goes to the primary person is given is extended to the other one and the policy . . . exclusions. The other person does not have less exclusions. The other person has the same exclusions of whoever the primary person was.
>
> I guess I am confusing one affirmative motion for summary judgment with reasons to deny the other. I am going to find as a matter of law that there was not permissive use of this vehicle. Unless asked to, I am not going to make a finding on the intentional act. I do not believe that is necessary. I do not know whether I have sufficient information before me one way or the other.

The circuit judge entered an order granting appellees' motion for summary judgment and denying Mrs. Ison's motion on January 20, 2005, stating that appellees had no duty to defend Mrs. Ison or to pay benefits as a result of the accident. Mrs. Ison has appealed from that order.

We approve the granting of a motion for summary judgment only when the state of the evidence portrayed by the pleadings,

affidavits, discovery responses, and admissions on file is such that the nonmoving party is not entitled to a day in court, *i.e.*, there is no genuine issue of material fact remaining, and the moving party is entitled to judgment as a matter of law. *Cumming v. Putnam Realty, Inc.*, 80 Ark. App. 153, 92 S.W.3d 698 (2002). Also, we normally view the evidence in the light most favorable to the party resisting the motion and resolve any doubts and inferences against the moving party. *Cranfill v. Union Planters Bank, N.A.*, 86 Ark. App. 1, 158 S.W.3d 703 (2004). However, when parties file cross-motions for summary judgment, they essentially agree that there are no material facts remaining, and summary judgment may be an appropriate means of resolving the case. *Id.* The filing of cross-motions for summary judgment, however, does not necessarily mean that there are no material issues of fact in dispute. In some cases, a party may concede that there is no issue if his legal theory is accepted and yet maintain that there is a genuine dispute as to material facts if his opponent's theory is adopted. *Id.* Appellant takes this approach.

Appellant's first point states that the circuit judge erred in "denying" summary judgment, so it appears that she is attacking the denial of her motion for partial summary judgment as well as the award of summary judgment to appellees.[1] She asserts that the policy covered her and her son under the following coverage extension:

> When **your** policy insures a **private passenger auto** for Bodily Injury and Property Damage Liability coverage, **we** will provide those same coverages for the use of certain other **private passenger autos**.
>
> 1. Use of Other **Private Passenger Autos**.
>
> Coverage applies to **you** or dependent relatives living in **your** household while using another **private passenger auto**. However, the **private passenger auto** cannot be:
>
> a. owned by **you** or dependent relatives of **your** household; or

---

[1] Usually, the denial of a motion for summary judgment, which is an interlocutory order, may not be appealed. However, it can be considered in conjunction with an appeal from a grant of summary judgment. *Smith v. Farm Bureau Mut. Ins. Co. of Ark., Inc.*, 88 Ark. App. 22, 194 S.W.3d 212 (2004).

b. furnished or available for regular use by **you** or dependent relatives of **your** household.

Mrs. Ison argues that, because this provision is silent on the issue of permissive use and she is a named insured and comes within the meaning of "you," she is entitled to a defense and to coverage. She also asserts that, because her son is a "dependent relative" living in her household, he is also covered by the policy and entitled to a defense, even though the accident occurred on a night that he was staying with his father, who shared custody of him. Under this point, Mrs. Ison contends that the circuit judge's finding that her son's use of the vehicle was not permissive was not a sufficient basis for summary judgment because the policy's provisions related to permissive use do not apply to her son. She argues that Coverage Extension No. 1 clearly extends coverage to a named insured or dependent family member for liability arising out of a named insured's or family member's "use" of another auto. Mrs. Ison also contends that the following provision did not apply to her son, because he did not meet the definition of "you" within the policy: "These coverage extensions do not apply to accidents: 1. that involve any **auto you** are driving without permission that is stolen or is reasonably suspected to be stolen. . . ." The policy defines "you" and "your" as "the policyholder first named in the current policy declaration. Unless specifically stated otherwise in the policy, **you** and **your** includes the policyholder's spouse if a resident of the same household." Mrs. Ison points out that her son is not the policyholder's spouse, and that other sections of the policy differentiate between "you" and "dependent relatives living in your household."

It is, therefore, necessary to construe the insurance policy. The general rule is that the pleadings against the insured determine the insurer's duty to defend. *Anderson Gas & Propane, Inc. v. Westport Ins. Corp.*, 84 Ark. App. 310, 140 S.W.3d 504 (2004). The duty to defend is broader than the duty to pay damages, and the duty to defend arises where there is a possibility that the injury or damage may fall within the policy coverage. *Id.* The insurer must defend the case if there is any possibility that the injury or damage may fall within the policy coverage. *Id.*

In reviewing an insurance policy, the appellate court follows the principle that, when the terms of the policy are clear, the language in the policy controls. *Anderson Gas & Propane, Inc. v. Westport Ins. Corp., supra.* The language in an insurance policy is to be construed in its plain, ordinary, popular sense. *Id.* If a policy

provision is unambiguous, and only one reasonable interpretation is possible, the court will give effect to the plain language of the policy without resorting to rules of construction. *Id.* Language is ambiguous if there is doubt or uncertainty as to its meaning and it is fairly susceptible to more than one equally reasonable interpretation. *Id.* If the policy language is ambiguous, the policy will be construed liberally in favor of the insured and strictly against the insurer. *Id.* Whether the language of a policy is ambiguous is a question of law to be resolved by the court. *Id.* If ambiguity exists, parol evidence is admissible and the meaning of the ambiguous term becomes a question for the fact-finder. *Id.*

Because the circuit judge based his decision on his determination that, as a matter of law, appellant's son's use of the vehicle was without permission, he obviously viewed the insurance contract as unambiguous. Contracts of insurance should receive a practical, reasonable, and fair interpretation consonant with the apparent object and intent of the parties in light of their general object and purpose. *Sweeden v. Farmers Ins. Group*, 71 Ark. App. 381, 30 S.W.3d 783 (2000). Further, different clauses in a contract must be read together and construed so that all of its parts harmonize, if that is at all possible. *Id.* It is error to give effect to one clause over another on the same subject if the two clauses are reconcilable. *Travelers Indem. Co. v. Olive's Sporting Goods, Inc.*, 297 Ark. 516, 764 S.W.2d 596 (1989).

In our view, appellant's hyper-technical interpretation of the policy is patently unreasonable. Essentially, she interprets it as extending greater coverage to dependent relatives living in her household, whose coverage is derivative of hers, while using another private passenger auto, than it does to her and her spouse. Reading the policy as a whole, as we must, it is clear that the interpretation given by the circuit judge was the only reasonable view possible. The obvious intent of the policy was to extend coverage for non-listed autos and for individuals that were not named insureds, spouses, or drivers, under very limited circumstances, and to require that all "dependent relatives living in [the Isons'] household" have permission to use the "other private passenger auto." Accordingly, we affirm on this point.

Mrs. Ison further argues that, even if permission was required, (1) the court should have held that, as a matter of law, her son had permission to take the vehicle, or (2) a material issue of fact — whether her son had permission — remains to be tried. She

correctly states that the permission from a named insured to another to drive a vehicle necessary to provide coverage under a liability policy may be express or implied. *See M.F.A. Mut. Ins. Co. v. Mullin*, 156 F. Supp. 445 (W.D. Ark. 1957). Mrs. Ison admits that express permission was not given to her son but argues that, at the least, an issue of fact exists as to whether he had implied permission. She reminds this court that Arkansas courts follow the "Hell or High Water" rule, under which implied permission will be found, short of theft or conversion. In *Commercial Union Ins. Co. v. Johnson*, 294 Ark. 444, 745 S.W.2d 589 (1988), the supreme court adopted the "initial permission" or "Hell or High Water" rule, which provides that, if the vehicle was originally entrusted by the named insured, or by one having proper authority to give permission, to the person operating it at the time of an accident, such operation is considered to be within the scope of the permission granted, regardless of how grossly the terms of the original bailment may have been violated. The court explained that an important policy behind the rule is to assure that all persons wrongfully injured have financially responsible persons to look to for damages and that a liability insurance policy is for the benefit of the public as well as for the benefit of the named insured. *Id.* That case holds that a deviation from the permitted use is absolutely immaterial; the only essential thing is that permission be given for use of the vehicle. *Id.* The court cautioned, however, that the rule that initial permission will suffice applies only when that permission was actually granted to the user sought to be brought within the coverage of the policy and concluded:

> The cases adopting the "initial permission" rule usually provide that it governs "short of theft or conversion," *see Milbank Mutual Insurance Co. v. United States Fidelity and Guaranty Co., supra,* 332 N.W.2d at 167, or "short of an unlawful taking," *see Odolecki v. Hartford Accident & Indemnity Co., supra,* 264 A.2d at 40. Although the question is not before us now, we agree that an insurer should not be liable to a thief or a person who has no permission to use a vehicle and who converts it to his or her own use. With respect to the situation in which one who has permission of the named insured grants permission to another person to use the named insured's vehicle, we make no decision. In this case the car belonged to Brett Davis. Teresa Davis, Brett's wife, had permission to use the car, and she gave permission to Self. However, no issue has been raised as to Self being the second permittee. As we noted at the outset, Commercial Union conceded that if Teresa had give Self permission,

Self's use of the car was covered under the policy. Some of the policy reasons for adopting the "initial permission" rule probably apply in the "second permittee" case to the same extent that they apply no matter how greatly the person having permission of the named insured may deviate from the permitted route or use, but we leave that question open.

Our holding is that the "initial permission" rule applies in Arkansas, and that the trial judge was correct in holding that the extent of route deviation by Self in the driving of the Davis vehicle is thus immaterial.

294 Ark. at 454, 745 S.W.2d at 594–95.

Mrs. Ison compares this situation to *Farmers Insurance Exchange v. Janzer*, 215 Mont. 260, 697 P.2d 460 (1985), where a fourteen-year-old boy caused an accident while running away from home in his parents' auto. The *Janzer* boy's father started teaching the boy to drive an automobile when he was ten years old; since the age of thirteen, the boy had frequently driven the auto on the highway and in the city when his parents were present; and, for several months before the accident, he drove the auto by himself to his job one mile away on a county road, with his parents' knowledge and express permission. The court understandably found that the boy's permission to use the auto "did not stop at the corral gate" and held that the issue of implied permission remained to be tried.

Mrs. Ison argues that the following considerations raised an issue of fact as to whether her son had implied permission to use the vehicle: (1) there was no evidence that her son had been expressly prohibited from using his father's vehicle; (2) he had driven the vehicle, while alone, in the past; (3) he had a driver's permit; (4) he had access to the keys; (5) he lived in the house of the vehicle's owner, his father.[2]

■ We disagree and find that the facts of this case are significantly different from those in *Janzer*. First, there was no "initial permission" actually given to appellant's son, and there-

---

[2] Additionally, Mrs. Ison contends that her son's intent to commit theft or conversion is a disputed issue of material fact, in light of his taking of prescription and non-prescription drugs and slashing his wrists in his suicide attempt during what was described as a "major depressive episode," which cast doubt on whether he was mentally capable of forming an intent. She notes that many courts have adopted the view that an insured suffering from a lack of mental capacity at the time of committing tortious conduct does not fall within an

fore, the "Hell or High Water" rule does not apply. Second, the evidence concerning the son's prior use of his father's vehicle was utterly insufficient to raise an issue of fact as to whether he had implied permission to take it on the date in question. In his deposition, Mr. Brown testified that his son had driven his father's truck by himself "probably twice" in the past; both times were "around the church parking lot" for the purpose of "either loading Boy Scout stuff up or something like that. . . ." Because appellant failed to demonstrate any issue of fact as to whether her son had implied permission to take the truck, we also affirm on this point.

Affirmed.

GRIFFEN and CRABTREE, JJ., agree.

---

intentional injury exclusion. The exclusions, however, were not ruled on by the circuit judge and, therefore, are not properly before us. *See Jones v. Double "D" Props., Inc.*, 357 Ark. 148, 161 S.W.3d 839 (2004).