2010 Ark. App. 848

**Barney TRAVIS, as Parent and Natural Guardian of Dylan Travis, and Safeco Insurance Company, Appellants**

v.

**SOUTHERN FARM BUREAU CASUALTY INSURANCE COMPANY, Appellees.**

**No. CA 10–455.**

Court of Appeals of Arkansas.

Dec. 15, 2010.

Michael McCarty Harrison, Bethany A. Pike, Watts, Donovan & Tilley, P.A., Little Rock, for appellant.

David Armstrong Hodges, Little Rock, for appellee.

ROBERT J. GLADWIN, Judge.

Appellants Barney Travis, as parent and natural guardian of Dylan Travis ("Travis"), and Safeco Insurance Company ("Safeco") appeal the January 15, 2010 order entered by the Craighead County Circuit Court, which granted the motion for summary judgment filed by appellee Southern Farm Bureau Casualty Insurance Company ("Farm Bureau"). Because we agree that there was a genuine issue of material fact in dispute, we reverse and remand.

### Facts

Virginia Hodges ("Hodges") and her husband J. Richard Hodges were the owners of a 2002 Ford Explorer. The vehicle was insured by Farm Bureau. The Farm Bureau policy, MV00680451 (the "policy"), was issued to Richard Hodges and Hodges, stepgrandfather and grandmother of Travis. The policy defines a "covered person" as "any members of your household and any person or organization legally responsible for the use of your auto with your permission."

On the night of February 3, 2008, then sixteen-year-old Travis drove to Hodges's house in his mother's vehicle at approximately 10:30 p.m. He had been at Hodges's house for about ten minutes when friends called to ask him to pick them up at a movie theater. He decided to take his grandmother's vehicle, which was bigger than the one he was driving. It is undisputed that Hodges was asleep and unaware that Travis took her vehicle. Travis's twelve-year-old cousin Hunter was also at Hodges's house at the time, and Travis told Hunter he was going to borrow Hodges's vehicle.

Travis was able to gain access to the vehicle because Hodges had given him the code to her garage and, the code to unlock her vehicle; she had also left the keys to the vehicle inside it. After accessing the vehicle, Travis then drove to the movie theater to pick up his friends.

After Travis left, Hodges awoke, and Hunter explained to her that Travis had taken her vehicle. Hodges attempted to call and text Travis to tell him to bring the vehicle back. Hodges stated that Travis had not asked permission to drive her vehicle that evening, and that if he had asked, she would not have given him permission to drive at that time of night by himself to pick up friends.

After leaving the theater, Travis, at the urging of his friends, decided to "jump a hill." During the approach to the jump, Travis decided that he no longer wished to complete the jump and applied his brakes. Travis then lost control of the vehicle and collided into a tree. Two of Travis's five passengers allege that they sustained injuries as a result of this accident.

Those two passengers filed a complaint against Travis for damages. Safeco had issued an automobile liability insurance policy to Travis's father, Barney Travis, in which Travis was listed as an additional insured. Safeco provided a defense and made demand on Farm Bureau to assume coverage, arguing that Travis had implied permission to drive Hodges's vehicle, which was insured by Farm Bureau at the time of the accident.

Farm Bureau then filed a complaint for declaratory judgment against Safeco and Barney Travis, among others, seeking a declaration that Travis was not covered by the policy because Travis was not a "covered person" as defined by the policy. Farm Bureau alleged that Travis was not covered under the policy because he did not have implied permission to operate

Hodges's vehicle. Barney Travis and Safeco filed an answer to Farm Bureau's complaint, and Farm Bureau subsequently filed a motion for summary judgment.

The circuit court, with no objection from the parties, ruled on the motion for summary judgment based upon the pleadings. The circuit court granted summary judgment on the basis that the undisputed facts established that there was no implied permission from Hodges to Travis regarding the use of the vehicle. The circuit court found, accordingly, that there was no duty on the part of Farm Bureau to defend any proceeding as to Travis and no ₄duty to pay indemnity benefits under the Farm Bureau policy for any judgment that may be recovered against Travis. Appellants timely appealed the circuit court's January 15, 2010 order of summary judgment.

### Standard of Review

■ The granting of motions for summary judgment are only approved when the evidence demonstrated by the pleadings, affidavits, discovery responses, and admissions on file is such that the nonmoving party is not entitled to a day in court, i.e., there is no genuine issue of material fact remaining, and the moving party is entitled to judgment as a matter of law. *Ison v. Southern Farm Bureau Cas. Co.*, 93 Ark.App. 502, 221 S.W.3d 373 (2006). The evidence is normally viewed in the light that is most favorable to the party resisting the motion, and any doubts and inferences are resolved against the moving party. *Ison, supra.* A party seeking a declaratory judgment may move for summary judgment. *Clark v. Progressive Ins. Co.*, 64 Ark.App. 313, 984 S.W.2d 54 (1998).

### Discussion

■ Arkansas courts have held that, in order to create coverage under a liability policy, the necessary permission from an insured to another person to drive a vehicle may be express or implied. *Ison, supra.* In determining whether there is implied permission, courts consider the relationship between the owner and borrower. *Collins v. Morgan*, 92 Ark.App. 95, 211 S.W.3d 14 (2005) (quoting *Clark, supra* ). Implied permission has been described as follows:

> An implied permission ... is not confined to affirmative action, but means an inferential permission, in which a presumption is raised from a course of conduct or ₅relationship between the parties in which there is a mutual acquiescence or lack of objection signifying consent.

> But implied permission is not limited to such situations, and will be evaluated in light of all facts and circumstances surrounding the parties. Implied permission may be proved by circumstantial evidence. Circumstances such as usage, practice, or friendship may be used to show implied permission. It may be found that the insured has given implied permission where the named insured has knowledge of a violation of instructions and fails to make significant protest.

> . . . .

> If the owner of an automobile forbids another person from driving the automobile, but the other person continues to do so with the knowledge of the owner, then the owner has given implied permission to drive the automobile.

*Collins,* 92 Ark.App. at 103, 211 S.W.3d at 20–21(internal citations omitted).

■■ The term "permission" also contemplates more than "a tolerance without taking steps to prevent, and the term is used in the sense of leave; license or authority with the power to prevent." *Clark,* 64 Ark.App. at 319, 984 S.W.2d at 58. Implied permission is usually demonstrated by the parties' usage and practice

over a period of time prior to the day upon which the insured vehicle was being used, assuming all parties were aware of the facts. *Id.* When that showing is made, there is a sufficient showing of a course of conduct where the parties mutually agreed to bring the additional person under the policy protection, provided, that any acquiescence by the insured was by a person who had the authority to grant permission for him. *Id.*

In addition to considering the relationship between the parties, our supreme court has adopted the "initial impression" or "Hell or High Water" rule, which holds that "implied ₆permission will be found, short of theft or conversion." *Ison,* 93 Ark.App. at 510, 221 S.W.3d at 379. The rule provides that, if a named insured originally entrusts the vehicle to the person who was driving it at the time of the accident, the operation is within the scope of the permission granted, regardless of how grossly the terms of the original bailment may have been violated. *Id.* It is immaterial whether there has been a deviation from the permitted use. The only essential element is that permission was given for use of the vehicle. *Id.* The rule, however, only applies when actual permission was granted to the user of the vehicle. *Id.*

Viewing the facts in the light most favorable to appellants, as the parties resisting the motion for summary judgment, we hold that there is a material question of fact as to whether Travis had implied permission to operate Hodges's vehicle. Travis testified that he had driven Hodges's vehicle many times before the day of the accident, as often as one to three times per week. Furthermore, it is undisputed that Travis had permission to drive Hodges's vehicle on the day before the accident at issue and that he used it from approximately 7:00 p.m. until about 10:30 p.m. He explained that he did not think that it was a problem for him to take the vehicle on the evening in question because he used it all the time.

Consistent with *Ison, supra,* the evidence could support a finding that the operation of the vehicle was within the scope of the permission Hodges granted, even though Travis might have violated the original scope of permission. Travis believes that he had implied permission to use Hodges's vehicle, and Hodges alleges that he did not. There is evidence present that ₇Travis used the vehicle on a regular basis, had regular access to the vehicle, and that Hodges never disagreed to Travis using the vehicle unless she needed to use the vehicle herself. There is evidence of a relationship in which there was implied permission on Travis's part to use the vehicle when he wanted to do so, and conflicting evidence that Travis was required to ask for permission and that his use of the vehicle was limited.

Farm Bureau argues that while Hodges had, on specific occasions, given Travis permission to operate the vehicle, she indicated that it was not permission to operate it at any time. Hodges testified that no one in her family could drive her vehicle without first talking to her, and no one had implied permission to drive her vehicle whenever they wanted. Farm Bureau maintains that, in the instant case, there was insufficient evidence of usage and practice over a period of time for Travis to take Hodges's vehicle without permission to prove implied consent.

In the case of *Collins, supra,* this court held that, even though there was a direct instruction to the fiancee of the car owner not to use the insured vehicle, the *jury* should be allowed to determine (1) whether the insured gave the driver implied permission to drive the vehicle; (2) whether the insured knew or should have known

that the other driver would drive the vehicle even though the insured had instructed her not to; (3) whether the insured's actions were sufficient enough to be a significant protest after the insured discovered that the other driver had violated his instructions. *Collins, supra*, 92 Ark.App. at 105–06, 211 S.W.3d at 22.

We hold that the determination of whether Hodges should have known that Travis would use her vehicle, even though she claimed to have told him not to, and whether Hodges's actions were sufficient enough "protest" after she discovered that Travis had allegedly driven the vehicle without her permission, should have been made by a jury. Additionally, both Travis and his mother, LeAnn Travis, testified that they believed that Hodges was claiming that Travis did not have implied permission solely because she was afraid of being sued. Travis testified Hodges told him that she had to "stick up for herself" and that she could not say that he had permission or she would get sued. This evidence raises an additional question of fact for the jury to decide whether Hodges's protestations concerning any implied permission for Travis to use her vehicle are truthful. The answer to this question is based solely upon Hodges's credibility, which is also for the jury to decide.

The circuit court acknowledged in its order granting summary judgment that there was conflicting testimony concerning implied permission, yet went on to rule on the issue, basing its decision only on the circumstances of when Travis used Hodges's vehicle without permission. *Collins, supra*, requires the circuit court to consider all of the circumstances regarding the relationship between the owner and the borrower. Further, there is a factual dispute as to whether Hodges, by leaving the keys in her vehicle after Travis took it without permission, acquiesced to him taking it in the future without specific permission to do so.

The evidence presented is sufficient to raise issues of fact as to whether Travis had implied permission to drive Hodges's vehicle. As a result, we hold that the circuit court erred in granting summary judgment on the issue. Accordingly, we reverse and remand.

Reversed and remanded.

ABRAMSON, J., agrees.

PITTMAN, J., concurs.