

# ARKANSAS COURT OF APPEALS

DIVISION IV
**No.** CV-15-1065

| | |
|---|---|
| JOSHUA M. SPORE<br><br>APPELLANT<br><br><br>V.<br><br><br>GEICO INDEMNITY COMPANY<br>APPELLEE | **OPINION DELIVERED** JUNE 8, 2016<br><br>APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, SECOND DIVISION<br>[NO. CV-14-2226]<br><br>HONORABLE CHRISTOPHER CHARLES PIAZZA, JUDGE<br><br>AFFIRMED |

## ROBERT J. GLADWIN, Chief Judge

Appellant Joshua M. Spore appeals the September 8, 2015 order of the Pulaski County Circuit Court that, in part, granted appellee GEICO Indemnity Company's motion for summary judgment. Appellant argues that (1) the facts presented to the trial court do not support the breach of the cooperation clause in Lolita Ford's agreement with appellee; (2) the answer to the question "Who is Laura Mott?" is a material fact at issue in this matter; (3) the facts as presented do not give rise to a duty to cooperate on the part of Adrian Ford[1], under the policy issued to Lolita, and thus, appellee's contact with Adrian does not satisfy its burden of proof; (4) the contacts made by appellee do not give rise to the satisfaction of

---

[1] A review of the record failed to clarify the relationship, if any, between Lolita Ford and Adrian Ford; however, for purposes of this opinion, they will be referred to collectively as the Fords.

SLIP OPINION

the due–diligence standard; and (5) appellee did not establish that it was prejudiced by the alleged lack of cooperation by the Fords. We affirm.

## I. *Facts*

On March 6, 2011, appellee issued an automobile liability insurance policy to Lolita—the policy's only named insured—for the period from April 9, 2011, to October 9, 2011, providing liability insurance to Lolita for a 2005 Pontiac Grand Prix. The policy contains the following cooperation clause as a condition to liability coverage:

> 3. ASSISTANCE AND COOPERATION OF THE INSURED.
> The insured will cooperate and assist us, if required:
> (a) In the investigation of the occurrence;
> (b) In making settlements;
> (c) In the conduct of suits;
> (d) In enforcing any right of contribution or indemnity against any legally responsible person or organization because of bodily injury or property damage;
> (e) At hearings and trials;
> (f) In securing and giving evidence; and
> (g) By obtaining the attendance of witnesses.

On June 24, 2011, Adrian was involved in an automobile accident with appellant on Interstate 430 in Little Rock, Arkansas, while driving the insured vehicle. Appellee received notice of this accident and began its initial investigation as to coverage and liability. One issue related to coverage was whether Adrian was a permissive user of the insured vehicle, which was required for him to qualify as a defined "insured" under the policy. Appellee was unable to resolve this question because it was unable to make contact with either Adrian or Lolita. On August 12, 2011, appellee wrote to appellant to advise him that because of the Fords' failure to cooperate in the investigation of this claim, appellee could not "confirm that Adrian was a permissive user of the insured vehicle" and, therefore, was "not presently

in a position to handle this matter as a covered loss." Appellee stated that it would "reconsider this decision upon receipt of relevant information regarding this issue."

On November 17, 2011, appellant filed a complaint in the circuit court of Pulaski County against the Fords for personal injury and property damage arising out of the June 24, 2011 accident (Case 1). Notwithstanding the fact that neither of the Fords notified appellee of the lawsuit, appellee received notice of the filing of the lawsuit and retained attorney Keith M. McPherson to defend the Fords, and Mr. McPherson filed a timely answer on the Fords' behalf. On June 21, 2012, appellant served interrogatories, requests for production, and requests for admission on the Fords. Mr. McPherson could not prepare responses to these discovery requests without the Fords' assistance, and on numerous occasions, including on November 15, 2012, attempted to contact the Fords to request their cooperation in defending the lawsuit against them. Mr. McPherson was able to speak to Lolita's husband and daughter, who promised to forward his messages and contact information to her. Lolita also directly received Mr. McPherson's November 15, 2012 letter, but the Fords continuously ignored Mr. McPherson and appellee's attempts at contact.

Appellee also retained a private investigator to locate the Fords and to inform them of appellant's lawsuit. The investigator was able to make contact with Adrian on June 22, 2012, or with Lolita's husband on July 18, 2012. The investigator informed them about the pending suit and requested that they contact Mr. McPherson. Despite these efforts, neither Adrian nor Lolita contacted Mr. McPherson or appellee. On November 14, 2012, Mr. McPherson filed a motion to withdraw as counsel for the Fords based on their failure to cooperate in the defense of appellant's lawsuit. The Fords were served with Mr.

3

McPherson's motion to withdraw. The Fords still made no effort to participate in their defense, and Mr. McPherson was relieved as counsel on November 27, 2012.

After Mr. McPherson was relieved as counsel, appellant filed and served on the Fords motions to compel responses to the discovery requests served on June 21, 2012. Appellant reserved his discovery requests by certified mail, return receipt requested, restricted delivery on June 27, 2013, and despite signing for the discovery requests, neither Adrian nor Lolita responded to them. Therefore, on September 16, 2013, appellant filed an amended motion to compel. On September 19, 2013, the trial court entered an order compelling the Fords to respond to appellant's discovery requests. In that order, the trial court stated that the failure to respond to the discovery requests could result in their answer to the complaint being stricken and a default judgment being entered against them.

Despite the trial court's order, the Fords again failed to respond to appellant's discovery requests. Appellant filed a motion to strike their answer and for entry of a default judgment, and the Fords were served with the motion by warning order, but they again failed to respond. On December 5, 2014, the trial court entered an order striking the Fords' answer and entered a default judgment against them, but no damages were awarded at that time.

On June 10, 2014, while Case 1 was pending, appellee filed a complaint for declaratory judgment, requesting the court to declare that the Fords had breached the insurance policy with appellee by failing to cooperate and participate in their defense in Case 1; that appellee had been prejudiced by this failure; and that appellee was under no obligation to satisfy any judgment against the Fords in Case 1 (Case 2). In Case 2, appellee

filed a motion for default judgment on January 19, 2015, and a motion for summary judgment on January 27, 2015. Appellant responded to appellee's motion for default judgment in Case 1 on February 3, 2015, and to its motion for summary judgment on February 13, 2015. Appellee filed a reply on March 3, 2015, and on September 8, 2015, the trial court entered an order and declaratory judgment in favor of appellee—for default judgment against the Fords and summary judgment against appellant. Appellant filed a timely notice of appeal on October 1, 2015.

II. *Standard of Review and Applicable Law*

The general rule is that the pleadings against the insured determine the insurer's duty. *Ison v. So. Farm Bur. Cas. Co.*, 93 Ark. App. 502, 221 S.W.3d 373 (2006). The duty to defend is broader than the duty to pay damages, and the duty to defend arises where there is a possibility that the injury or damage may fall within the policy coverage. *Id*. The insurer must defend the case if there is any possibility that the injury or damage may fall within the policy coverage. *Id*. In reviewing an insurance policy, the appellate court follows the principle that, when the terms of the policy are clear, the language in the policy controls. *Id*. The language in an insurance policy is to be construed in its plain, ordinary, popular sense. *Id*. If a policy provision is unambiguous, and only one reasonable interpretation is possible, the court will give effect to the plain language of the policy without resorting to rules of construction. *Id*.

Language is ambiguous if there is doubt or uncertainty as to its meaning and it is fairly susceptible to more than one equally reasonable interpretation. *Ison*, *supra*. If the policy language is ambiguous, the policy will be construed liberally in favor of the insured and

strictly against the insurer. *Id.* Whether the language of a policy is ambiguous is a question of law to be resolved by the court. *Id.* If ambiguity exists, parol evidence is admissible and the meaning of the ambiguous term becomes a question for the fact-finder. *Id.* Contracts of insurance should receive a practical, reasonable, and fair interpretation consonant with the apparent object and intent of the parties in light of their general object and purpose. *Id.*

Under Arkansas law, an insured who materially fails to comply with the obligations of a cooperation clause in his or her insurance policy relinquishes any entitlement to coverage in connection with the claim at issue. *See Black & White, Inc. v. Reserve Ins. Co.*, 242 Ark. 573, 414 S.W.2d 369 (1967); *Firemen's Ins. Co. v. Cadillac Ins. Co.*, 13 Ark. App. 89, 679 S.W.2d 821(1984). To deny coverage based on its insured's breach of a cooperation clause, the insurer bears the burden of proving three things. First, the insurer must prove that it exercised "due diligence . . . to locate the insured or to find the reason for their absence." *Shelter Mut. Ins. Co. v. Page*, 316 Ark. 623, 628, 873 S.W.2d 534, 536 (1994). Second, the insurer must prove that the insured's lack of cooperation was "deliberate or without good reason." *See Fireman's Ins.*, 13 Ark. App. at 91, 679 S.W.2d at 822. Finally, the insurer must prove that it suffered prejudice due to its insured's failure to cooperate. *See id.* at 92, 679 S.W.2d at 823.

When reviewing a trial court's grant of summary judgment, the appellate court "need only decide if the granting of summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of its motion left a material question of fact unanswered." *Flentje v. First Nat'l Bank of Wynne*, 340 Ark. 563, 568, 11 S.W.3d 531, 535 (2000). Summary judgment is appropriate when the "pleadings,

SLIP OPINION

depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Ark. R. Civ. P. 56(c)(2) (2015). When a movant demonstrates a prima facie entitlement to summary judgment, the nonmoving party must "discard the shielding cloak of formal allegations and meet proof with proof by showing a genuine issue as to a material fact." *Hughes W. World, Inc. v. Westmoor Mfg. Co.*, 269 Ark. 300, 301, 601 S.W.2d 826, 826–27 (1980).

The evidence is normally viewed in the light most favorable to the party resisting the motion, and any doubts and inferences are resolved against the moving party. *Travis v. So. Farm Bur. Cas. Ins. Co.*, 2010 Ark. App. 848, 378 S.W.3d 786. A party seeking a declaratory judgment may move for summary judgment. *Id.* The granting of motions for summary judgment is approved only when the evidence demonstrated by the pleadings, affidavits, discovery responses, and admissions on file is such that the nonmoving party is not entitled to a day in court, i.e., there is no genuine issue of material fact remaining, and the moving party is entitled to judgment as a matter of law. *Id.*

III. *Discussion*

Appellant raises multiple issues on appeal, three of which we hold are not preserved for our review: (1) whether the evidence supports the trial court's finding that Lolita breached the cooperation clause in her agreement with appellee; (2) whether the answer to the question "Who is Laura Mott?" is a material fact at issue in the case; and (3) whether the facts presented give rise to a duty to cooperate on the part of Adrian under Lolita's policy, and if so, did appellee's contacts with Adrian satisfy their burden for due diligence.

Appellant did not raise these arguments below, and our supreme court has held that it is "axiomatic that this court will not consider arguments raised for the first time on appeal." *Silkman v. Evangelical Lutheran Good Samaritan Soc'y*, 2015 Ark. 422, at 4, 474 S.W.3d 74, 76. *See also Worden v. Kirchner*, 2013 Ark. 509, 431 S.W.3d 243; *Scottsdale Ins. Co. v. Morrowland Valley Co., LLC*, 2012 Ark. 247, 411 S.W.3d 184. Below, appellant either failed to raise these issues, merely argued the issues generally, or made conclusory assertions that appellee had failed in its burden of proof. This is insufficient to preserve the issues for appellate review.

Appellant next argues that the contacts made by appellee do not satisfy the due-diligence standard. Appellant contends that appellee largely depended on his personal actions in the case to support its claim that it has satisfied the due-diligence component. He notes that appellee cites the service of the interrogatories on the Fords by appellant's counsel as proof of its due diligence, as well as the warning order published by appellant's counsel regarding its motion to strike. In its brief in support of summary judgment, appellee asserted that neither Adrian nor Lolita notified appellee after being served with appellant's complaint in May 2012. However, appellee provided no proof, affidavits, or other information to support the claim that it did not receive notification of the lawsuit. Appellant argues that the fact that there is no information from appellee as to how it came to know about the lawsuit is a crucial issue regarding the allegation that the Fords breached a duty under the insurance contract with appellee. Appellant asserts that appellee failed to explain this issue in its motion for summary judgment.

8

We disagree and hold that the evidence demonstrates that appellee was diligent in attempting to locate the Fords and to determine the reason for their absence and failure to cooperate. Appellant's contacts with the Fords, the private investigator hired by appellee, and the trial court—specifically the volume and specificity of the contacts from appellant and the trial court in the lawsuit, including the service of motions to compel, an order granting those motions, a motion for default judgment, and the order granting that motion—when viewed in conjunction with the Fords' lack of response and involvement, support the trial court's finding that the Fords' failure to cooperate was deliberate or without good reason. Arkansas law, as well as the insurance policy at issue in this case, required the Fords to cooperate in their defense throughout the litigation. *See Firemen's Ins.*, *supra*. No matter how appellee received notice of the complaint in the underlying action, nothing occurred to relieve the Fords of their obligation to continue cooperating in their defense, including in the preparation of discovery responses and otherwise complying with the trial court's orders.

Finally, appellant argues that appellee failed to establish that it was prejudiced by the alleged lack of cooperation by the Fords. He submits that even if appellee proved (1) which individuals were actually its insured, (2) that those insureds failed to cooperate in breach of the contract, and (3) that it showed due diligence in locating the insureds, its proof is still not enough to prevail on its motion for summary judgment. Appellee, as the insurer, must also prove that this breach caused it to be prejudiced because without proving it was prejudiced by the breach, the breach of contract is irrelevant. *See Page*, *supra*. Arkansas courts have found prejudice in situations where an insured settles a claim without permission of

the insurer and when the insured makes misrepresentations of fact to the insurer. *Black & White, Inc.*, *supra*. Lack of notice of a pending claim has also been found to be prejudicial. *See Ramey v. State Farm Mut. Auto. Ins. Co.*, 54 Ark. App. 307, 924 S.W.2d 835 (1996).

Appellant notes that appellee provided no proof to establish that it made sufficient efforts or allowed for sufficient time, *prior to its denial of coverage*, to gain its insureds' cooperation, or that it had located its insureds at the time of its denial. Accordingly, appellant claims that it is irrelevant whether appellee can support its claim that its insureds failed to cooperate *after* appellant filed his lawsuit, because appellee had already denied coverage and provided no evidence that the Fords were uncooperative during this period.

We disagree, although acknowledging that as a final element of proof, appellee was required to prove that it was prejudiced by the Fords' refusal to cooperate in their defense. *See Firemen's Ins.*, *supra*. This court has held that an insurance company is prejudiced where the insured's breach of the insurance contract leads to the entry of a default judgment against the insured. *Ramey*, *supra*. It is further prejudiced when its insured's failure to cooperate prevents it from fully defending the case. *Firemen's Ins.*, *supra*.

Appellant offers no legal authority in support of his argument that appellee is barred from claiming prejudice because it denied coverage on an unrelated ground before the underlying action was filed, and the evidence supports that appellee did not, in fact, deny coverage before the suit was filed; it simply reserved its rights to deny coverage because the Fords were not cooperating in the investigation of this claim, thereby preventing appellee from determining whether Adrian was a permissive user of the insured vehicle. The fact

that appellee provided the Fords a defense in the lawsuit supports the conclusion that it did

not deny coverage before appellant filed the underlying action.

Additionally, appellant argues that appellee could have protected its interests further

by continuing to participate in the initial lawsuit. He submits that while liability may have

been an issue that was ultimately determined in its favor, appellee, through Mr. McPherson,

could have dealt with the issue of damages in order to mitigate its losses.

This section of appellant's argument defies common sense. The Fords' failure to

cooperate put defense counsel in the position of dealing with discovery requests, including

requests for admission that he could not answer without the Fords' assistance. We agree

with appellee's assertion that the Fords' refusal to cooperate in their defense propelled the

underlying action on a "fast track" to a default. Appellant ultimately obtained an order

compelling discovery responses, and for failure to comply with that order, an order striking

the Fords' answer and a default judgment. Without clients to provide the information

needed to respond to discovery, defense counsel could not have prevented the resulting

default judgment.

Finally, appellant argues that the order of summary judgment was premature because

it was entered before the final damages award in the underlying action. We hold that this

argument is without merit as well. When appellee initially filed its motion for summary

judgment, the Fords' answer had already been stricken, and the default judgment had been

entered. Appellee had suffered prejudice at this point because the default judgment barred

the Fords—and by proxy, appellee—from challenging any aspect of liability, including

causation, or otherwise raising any defense that would have defeated appellant's cause of

action. *See Entertainer, Inc. v. Duffy*, 2012 Ark. 202, at 8, 407 S.W.3d 514, 519 (holding that a defaulting defendant may not introduce evidence to defeat the plaintiff's cause of action); *Jones v. McGraw*, 374 Ark. 483, 488, 288 S.W.3d 623, 627 (2008) (holding that a default establishes proximate cause). By the time of the hearing on the motion for summary judgment, the damages hearing had been held, and the trial court had ruled from the bench. We agree with appellee that the timing of the entry of the written damages award is irrelevant because as the prejudice to appellee from the Fords' willful failure to cooperate had already occurred.

Affirmed.

KINARD and GRUBER, JJ., agree.

*Ethredge & Copeland, P.A.*, by: *David L. Ethredge* and *Johnnie A. Copeland*, for appellant.

*Wright, Lindsey & Jennings LLP*, by: *Michael A. Thompson* and *Baxter D. Drennon*, for appellee.